PRATT, Appellant, vs. S. FREEMAN & SONS MANUFACTUR-
ING COMPANY, Respondent.

*November 11—November 28, 1902.*

*Sale on credit: Insolvency of vendee: Right to insist on payment in
cash: Remedies for breach by vendee: Resale by vendor to liqui-
date damages, how made? Notice: Measure of damages: Waiver
of vendor's breach as to time of delivery: Rescission by vendee.*

1. A sale of property, nothing being said to the contrary, is pre-
   sumed to be for cash on delivery thereof.
2. An executory contract for the sale of property on credit, contem-
   plating that the vendor will part with control of the subject
   thereof in advance of obtaining pay therefor, is presumed to be
   on condition that the executory vendee is solvent and will so
   continue.
3. In the circumstances stated in the last preceding paragraph, if
   the vendee becomes insolvent while the subject of the transac-
   tion remains under the control of the vendor, though in transit
   to the former and regardless of whether the title has passed to
   him or not, the vendor may detain the property, remove from
   the contract the element of credit, giving due notice thereof to
   the vendee, and insist upon payment for the property before it
   passes under his control.

Pratt v. S. Freeman & Sons Mfg. Co. 115 Wis. 648.

4. Executory contracts for the sale of property are presumed to have embodied in them the features mentioned in the last two preceding paragraphs.

5. In case the element of credit in an executory contract for the sale of property is removed because of the insolvency of the vendee, the contract stands in all respects the same as any sale for cash on delivery; and if it is breached by neglect or refusal of the vendee to consummate the transaction by paying the price agreed upon and accepting the property, the vendor may treat the contract as broken and thereupon proceed by any one of the following ways to redress the wrong: He may store the property for the buyer and sue for the purchase price; or may sell the property and recover any deficiency resulting; or may keep the property as his own and recover the difference between the contract price and the market price at the time of the breach and at the time and place of the delivery.

6. In exercising the right of the vendor to his choice of remedies in the circumstances stated in the last preceding paragraph he is not burdened by any condition that he shall consult the interests of the vendee.

7. If the second remedy mentioned be adopted, the sale may be made at auction or in a private way, as suits the convenience or desire of the vendor, so long as the way chosen is calculated to produce in money the full market value of the property. No notice of the time and place of sale is necessary, but notice of the intention to sell should be given to the end that the executory vendee may have a reasonable opportunity to comply with his contract and protect his interests by paying for the property as agreed upon.

8. The element of credit being removed from an executory sale contract under the rules before stated, subsequent ability of the executory vendee to take and pay for the property does not restore such element. If the modified contract is broken by neglect or refusal of the vendee to comply therewith, the only way to prevent the vendor from enforcing his remedy for the breach by selling the property is by tendering to him at the proper place the full amount of the purchase price.

9. If the vendor, in an executory contract for a sale and delivery of property by a given time, upon credit, breaches the same as to the element of time, and the vendee nevertheless insists upon the contract being consummated, but in the meantime has become insolvent, such insistence so far waives the breach as to prevent the vendee from subsequently rescinding the contract on account of such breach, and does not militate against the vendor's right to modify it as to the element of credit because

of the vendee's insolvency, notwithstanding such insolvency may be in whole or in part referred to such breach.

10. If the vendee upon credit is required for cause to take the subject of the transaction and pay therefor upon delivery thereof, and refuses to do so, neither the remedy chosen by the vendor for the breach nor the manner of enforcing it gives the vendee any right to rescind the contract.

11. When, in the circumstances suggested in the last preceding paragraph, the vendor elects to stand upon the contract and demand damages for the breach and to sell the property, the primary purpose of the sale is to liquidate his damages in a manner binding on the vendee, and secondarily, to recover his loss so far as the proceeds of the sale will suffice for that purpose. Irregularities in making the sale do not affect his right to recover for the vendee's breach. It only bears on the weight of the result of the sale as evidence of the market value of the property and the amount of the vendor's damages.

12. If the executory vendee in a contract for the sale of property refuses to consummate the same, the property remaining under control of the vendor, the latter's measure of damages is the difference between the market value of the property at the time of the breach and the contract price at the place for delivery. A sale under proper conditions establishes the market value. If a sale is made, not under such conditions, such value must be established in some other way. If the vendor sells the property and uses all reasonable efforts to secure the best price obtainable therefor, or obtains a fair price, it settles the question of the market value, and incidentally the amount of the damages.

13. An executory vendor, having demanded that the purchaser take the property and pay therefor upon delivery, and the latter in response to such demand having offered to pay a less sum than the amount due, and not changed his position down to the time of the sale of the property by the vendor, he may be regarded as having refused to pay such amount.

14. A sale of property for the purpose of liquidating damages for a breach of contract must be for cash. Therefore, a sale in that way; the vendor rejecting a larger offer for the property on credit, does not militate against the sale being evidence of the market value thereof.

15. The executory vendor of property does not forfeit his right to sell the same for the purpose of liquidating his damages for a breach on the part of the vendee in failing to take and pay therefor upon delivery, by refusing the vendee opportunity to

inspect the property, if, at the time thereof, the latter is stand-
ing upon a refusal to take the property and pay therefor accord-
ing to contract.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Racine
county: FRANK M. FISH, Circuit Judge. *Affirmed.*

The complaint was to the following effect: February 16,
1900, the Central Navigation & Construction Company of
the state of Oregon, contracted with defendant, of the city
of Racine, Wisconsin, for a steam boiler to be manufactured
and delivered to such company by May 1st, following, for the
sum of $6,000, one third being paid at the date of the con-
tract, and the balance to be paid one half at the time of the
delivery of the boiler and the other in thirty days thereafter.
In November, 1900, defendant being in default as to the
delivery of the boiler but having it ready therefor, refused
the navigation company's demand for the privilege to in-
spect it preliminary to shipment, said company offering at
the time of such demand to pay the balance due therefor.
Subsequent to the date last mentioned, defendant sold the
boiler to other parties, pretending to have rescinded the con-
tract with the navigation company.  November 20, 1900,
and before this action was commenced, such company, for
value, assigned its right to recover the down-payment of
$2,000 to plaintiff.  December 6, 1900, plaintiff notified de-
fendant of such assignment and demanded payment of said
sum with interest from the time the same came to his hands,
which demand was refused.  Judgment was asked for
$2,000, with interest and costs.

Defendant answered admitting the making of the con-
tract as alleged, and the completion of the boiler for ship-
ment, but alleged that prior to such completion the naviga-
tion company became insolvent; that defendant then exer-
cised its right to hold the boiler for full payment of the
purchase money, duly notifying said company of its attitude

in the matter; that thereafter, the navigation company having neglected to pay for the property, defendant exercised its legal right to sell the same for the account of such company, realizing $150 over and above the amount due, which, before the commencement of this action, was tendered to plaintiff, who refused to accept the same.

The evidence upon the trial was to the effect that the breach of contract by defendant, in failing to complete the boiler for shipment May 1, 1900, was waived; that the navigation company, before the boiler was ready for shipment, became insolvent and was notified that by reason thereof the boiler would not be shipped in advance of full payment therefor; that the boiler was such that there were very few customers for it; that defendant sold it, as alleged in the answer, because of the vendee's insolvency and its neglect to take and pay for the property as required; that $150 was realized over and above the amount due for the boiler, after paying expenses of sale. No complaint was made in the case but that a fair price was obtained for the boiler, but evidence was produced to show that a still better price might have been secured; that the property was sold for $4,300 cash, and an offer of $4,400, $400 down and $1,000 per month for four months, was refused. No complaint was made by evidence in the case as to the manner in which the sale was effected, in that it was at private sale, except that defendant allowed a commission to the person who acted as its agent in the matter, while he also obtained a commission from the purchaser. It appeared, however, that the commission was reasonable except for the fact that the agent took pay from both vendor and purchaser, and further that defendant allowed the commission without knowing that the agent was getting pay from both sides of the trade. There was evidence to the effect that the navigation company, about November 1, 1900, made arrangements with a party to take and pay for the boiler, and notified

defendant that it was ready and willing to take the property and pay the sum of $3,067 as the balance due, which was considerably less than the real balance; that at the time of such offer such company had knowledge that arrangements had been partially made to sell the boiler to other parties, that it was on car ready for shipment, and that the true balance due would have to be paid by November 10 or the property would go forward to the proposed purchaser; that upon the day this notice was sent a boiler inspector from Chicago, representing a party in that city, applied for leave to inspect the boiler and was refused because he did not present any evidence of authority in the matter; that several telegrams passed between defendant and the navigation company, but no tender of payment of the balance due was made, nor was any suggestion made that the company, or any one in its behalf, was ready to pay the true balance due; that after the company was notified that the boiler would be held for or in its behalf till November 10, and its apparent insistence upon taking the same without paying the full amount due therefor, and defendant becoming informed, as it supposed, through the telegraphic correspondence with its agent and the navigation company, that the latter's activity was to aid a rival of defendant's proposed purchaser to obtain possession of the boiler, it withdrew the offer to hold the property till November 10, and closed the deal with their customer.

The verdict was for plaintiff for $150. Judgment was rendered accordingly.

*John F. Harper,* for the appellant.

For the respondent there was a brief by *Cooper, Simmons, Nelson & Walker,* and oral argument by *John B. Simmons.*

MARSHALL, J. The view we take of this case renders some of the questions discussed in the briefs of counsel unimportant, if not entirely immaterial to the vital question to

be solved. By looking at the facts disclosed in the light of the true situation of parties to an executory sale contract, authorizing the vendee to sell the subject thereof to a third person, and the purpose and effect of making such sale, the case will appear to be a very simple one and the assignments of error require no very lengthy treatment.

If a person contracts to sell and deliver property to another on credit, not retaining any lien thereon, specifically, to secure the purchase money, the presumption is that he acts upon the belief that the latter is solvent, and on condition that he will so remain. If there is a breach in that regard before control of the property passes to the buyer, the seller may withdraw from the contract the element of credit and insist that it shall stand only as an agreement to sell for cash upon delivery of the property, and that the contract as so modified shall be executed; and upon the buyer's neglect or refusal to perform, the seller may have a choice of several remedies for the wrong:

"The seller may store the property for the buyer and sue for the purchase price; or may sell the property as agent for the vendee and recover any deficiency resulting; or may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery." *Van Brocklen v. Smeallie,* 140 N. Y. 70, 75, 35 N. E. 415.

In case he elects to take the second remedy mentioned, the sale of the property is but a mere means of determining the precise amount of the damages caused by the breach, while the incidental effect is to satisfy the loss suffered by the vendor so far as the proceeds of the sale will accomplish that result. Every executory contract for the sale of property upon credit is presumed to have embodied in it the features referred to. Mechem, Sales, § 1647. That is elementary. It is a mistake to suppose that when an executory contract of the character we are considering has been once rightfully modified by eliminating therefrom the element of credit,

such element can be revived merely by subsequent ability of the executory vendee to pay for the property. Notwithstanding such subsequent ability, his rights will remain the same as if the contract had originally contemplated cash payment to the vendor upon delivery of the property. It is also a mistake to suppose that when the modified contract is once breached by the neglect or refusal of the vendee to take the property and pay therefor at the place of delivery, giving the vendor the right to proceed to recover damages for the wrong, he can be debarred from pursuing his remedy by less than an actual tender to him of the amount due upon the contract. Immediately upon the vendee's refusing or neglecting, when required to do so, to comply with the sale contract by paying for the property and accepting delivery thereof, the cause of action of the vendor becomes complete and his right to enforce the same by such appropriate remedies as he may elect to pursue perfect. If he chooses to liquidate his damages by a sale of the property and incidentally to recover his loss so far as the proceeds of the sale will effect that result, failure to give notice of the intention to sell the property, and failure to do that which is reasonably necessary to secure the best price obtainable therefor, does not give the vendee any right to rescind his contract, but renders the result of the sale not binding on him as to the amount of the vendor's loss by the former's breach, and he will remain liable to the latter for the full market value of the property less his actual damages, independently of the sale. The sale in such circumstances is but a method, as before indicated, of enforcing a right to damages for breach of contract, and of making evidence of the precise amount of such damages. The sale, when properly conducted, the executory vendee having been so notified of the intention to make it as to give him reasonable opportunity to prevent it by paying his debt, constitutes a basis, binding on him, for computing the damages for which he is liable. The rule governing the subject was laid down

in *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513, in these words:

"If a resale is made and the evidence shows that all reasonable efforts were made to secure the best price obtainable, or that the price obtained was a fair one, it settles the question of the market value, so that the damages become liquidated."

The idea is that when the executory vendee of property breaks his agreement to take and pay for the property, the measure of damages is the difference between the market value thereof and the contract price; but the vendor must necessarily establish that as a basis for his claim. If he sues for his damages without selling the property, or without selling the same with proper regard to the rights of the executory vendee, he takes upon himself the burden of establishing the fair market value of the goods at the time of the breach. So it is said that notice to the vendee of the vendor's intention to make the sale, and the sale, with proper regard to the interests of the former, merely create definite and conclusive evidence of such market value. *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co., supra; Gehl v. Milwaukee P. Co.* 105 Wis. 573, 81 N. W. 666; *Davis S. O. Co. v. Atlanta G. Co.* 109 Ga. 607, 34 S. E. 1101; Mechem, Sales, §§ 1649, 1650.

There is no controversy here but that the Central Navigation & Construction Company, before the boiler was ready for delivery, became hopelessly insolvent. Consequently there can be no controversy but that respondent had the right to withdraw from the contract the element of credit. It did so. There is also no controversy as to whether, upon that being done, it required the navigation company to comply with the modified agreement by a day named or it would proceed to enforce its legal remedy for the breach by selling the boiler. Manifestly, at that stage in the relations be-

tween the parties there was but one way for the navigation company to prevent respondent from treating the contract as broken, viz.: by complying with it; and but one way of doing that, viz.: by seasonably tendering to respondent at the place for delivery of the boiler, the balance of the agreed purchase money, being the sum of $4,000. Mere ability to do so, or the making of an arrangement to obtain money therefor, did not affect respondent's rights in the slightest degree. That answers effectually appellant's first complaint that the trial court erred in rejecting evidence going to show that at the time of the resale parties stood ready to advance to the company money necessary to pay for the boiler; also the second assignment of error, that the court should have directed a verdict for plaintiff since there was no right to sell the boiler in the face of the fact that the navigation company was able to take and pay therefor. It was given ample notice that the property would be sold unless the full amount of $4,000 was paid. Not only was payment not made as demanded, but notice was sent to respondent that the navigation company was willing to pay only $3,067, $933 less than the amount due. The sum and substance of its several communications to respondent prior to the resale was that it insisted upon taking the property without fully complying with the modified contract, and that respondent should desist from efforts to liquidate its damages notwithstanding no tender was made of the full amount due for the property. It seems clear that the attitude of appellant's assignor was such that respondent was fully justified in regarding the contract with such assignor broken. It follows that it had the legal right to liquidate its damages by a resale of the property. Timely notice to such assignor of its intention to do so, and the failure of such assignor to respond by tendering the amount due for the boiler, was sufficient to put the latter in default. Notice

of the time and place of the sale was not necessary. Mechem, Sales, § 1637.

The point is made that the navigation company did not make default, because it had the right to inspect the boiler before paying therefor and that it was not allowed to do so. The conclusive answer to that is that, before any demand in that regard was made, the company indicated, as before shown, a willingness to pay only $3,067 as the balance due, while the true balance was $4,000, and that its attitude thenceforward did not change, and that no sum whatever was actually tendered respondent.

The further reason is suggested, why a verdict should have been directed for plaintiff, that the navigation company was not given a reasonable time to take the boiler after the element of credit in the executory contract was eliminated; that respondent proceeded with undue haste to disable itself from complying with the modified contract. That position seems to be untenable in view of the undisputed fact, several times alluded to, that respondent did not treat the contract as broken till the company, in response to the former's demand for the full payment of the balance of $4,000, assumed an attitude in effect refusing to pay that sum.

It is further suggested that respondent breached the contract and gave the navigation company a right to rescind and sue for the down-payment on the boiler because of the sale thereof for $4,300 cash in the face of an offer of $4,400 part cash and the balance on time extending over four months. In that counsel for appellant loses sight of the fact that such a sale is primarily to make evidence of the precise amount of damages suffered by the breach which gives rise to the right to make the sale. Irregularities in procedure to effect the sale do not forfeit the right of sale, but render the result not binding on the parties concerned as evidence.

That is all.   The rule on the subject was clearly worked out, as it seems, in *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513, thus:

"In an action for damages for refusal on the part of the vendee to accept goods as agreed in his contract of purchase, the measure of damages is the difference between the market value of such goods at the time of the breach and the price the vendee agreed to pay; and when a sale is made within a reasonable time, though made at auction,  .   .   . the price obtained is evidence to be considered on the question of the market value at the time of such breach; and if a resale is made and the evidence shows that all reasonable efforts were made to secure the best price obtainable, or that the price obtained was a fair one, it settles the question of the market value so that the damages become liquidated."

In the light of that the record does not disclose any reasonable ground for complaint in regard to the manner the sale was conducted.   There is no controversy but that, in view of the nature of the property and the limited number of customers therefor, a private sale, through an agent competent to manage such a transaction, was proper; and there is no evidence that the amount realized was not the fair market value of the boiler.   If we should conclude that respondent did not proceed in a way reasonably calculated to secure the best price obtainable for the property, the result would still stand as evidence of the market value thereof and warrant the verdict of the jury, since there was no opposing evidence. But we cannot so conclude.   The only circumstance pointed to as indicating that the sale was not fairly conducted is that a cash purchaser was accepted, while a customer stood ready to take the property for $100 more, paying part cash and the balance in one, two, three, and four months.   That point is hardly worthy of serious consideration.   Obviously, the only purpose of the sale being to make evidence of market value binding upon the navigation company, a cash sale was the only one proper.   It would be a very novel proceeding to

attempt to prove market value of property, as between parties adversely situated, by what the property would sell ˙for on credit.

There is a further assignment of error in that the court refused to permit proof that the failure of respondent to comply with its contract on time tended to produce the insolvency of the navigation company and its consequent inability to take and pay for the boiler. The insistence of the navigation company upon taking the property notwithstanding the breach as to time of completing it waived any right it might otherwise have had to rescind the contract. That seems plain. That left it bound to perform the contract with the element of credit removed, not waiving, however, any claim it might have for damages because of respondent's breach. No such claim for damages was suggested upon the trial as an excuse for not paying the full amount due respondent previous to the sale, nor as having been assigned to appellant, nor as having any existence as a justification for failure to take the property according to the contract. A person cannot waive his right to rescind a contract because of a breach thereof by the other party thereto, and at the same time, rightfully, himself breach it, giving such other a right to a remedy for his loss occasioned thereby, and then rescind the contract because such other invokes such remedy. Benj. Sales, § 782. The navigation company having elected to stand by the contract notwithstanding the breach as to time of completing the boiler, the right of respondent was not impaired to enforce it, holding the company liable for damages for any breach on its part, and being liable to the company for any damage caused to it by a violation of its right as regards the time of the completion of the boiler. The doctrine of election of remedies applies, that one having been chosen, all others are deemed waived. *Warren v. Landry,* 74 Wis. 144, 42 N. W. 247; *Crook v. First Nat. Bank,* 83 Wis. 31, 52 N. W. 1131; *Bank of Lodi v. Wash-*

*burn E. L. & P. Co.* 98 Wis. 547, 74 N. W. 363; *Carroll v. Fethers,* 102 Wis. 436, 78 N. W. 604; *Barth v. Loeffelholtz,* 108 Wis. 562, 84 N. W. 846; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698; *Clausen v. Head,* 110 Wis. 405, 85 N. W. 1028.

Complaint is made because the court did not rule that respondent was not entitled to charge the navigation company with $150 paid the agent who sold the boiler, since he also took pay as agent of the purchaser. We apprehend it would be a sufficient answer to that to suggest that if such were the case it could not avail appellant for support of his cause of action for damages based on rescission of the contract; but no reason whatever is perceived why respondent is not entitled, under the circumstances, to charge the amount paid its agent as part of the reasonable expenses of converting the boiler into money. The money was paid in the honest exercise, with due care, of the right to sell the property, and that satisfied respondent's duty to the navigation company. It was by no means an insurer of the company's interests. It was only required to proceed honestly, using all the care that could be reasonably expected under the circumstances, to secure the best price obtainable for the property.

Error is predicated on the refusal of the trial court to give this instruction:

"In so selling the defendant must act in good faith and under such circumstances as will be best calculated to produce the fair value of the property. In determining whether such sale was made in good faith you may consider the absence of notice to the Central Navigation & Construction Company of the time and place of sale, which is important and tends to show a lack of the good faith required."

That was properly refused upon several grounds: (1) Notice of the time and place of the sale, to the navigation company, was not essential, in any event, as regards the right of respondent to liquidate its damages. Mechem, Sales, § 1637. (2) Since it was proper to sell the boiler at private sale

(*T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513), notice of the time and place of sale was obviously impracticable. (3) It is improper to state to a jury that any particular evidentiary circumstance is important as bearing upon the existence or non-existence of some material disputed fact, unless that is so as a matter of law; and such was not the case in the instance under discussion.

This instruction was given, and error assigned thereon:

"If from the conduct of said company the defendant had a right to reasonably believe that said company did not intend to pay said sum, or were unable to pay the same, then you may find that they were acting in good faith in electing to sell to others."

That indicates that the trial court did not have a very clear conception of the purpose of the sale,—that the election to make the sale was a mere indication of an election of remedies for the recovery of damages for a breach of contract. Since respondent had a right to treat the contract as broken, it was not bound to consult the navigation company at all, or to regard its interests in merely choosing a remedy for the breach. If the instruction be viewed as indicating that respondent was burdened with any condition as regards its right to make a choice of remedies, it was manifestly wrong, but non-prejudicial to appellant. If it be viewed as referring to the action of respondent in treating the contract of the navigation company as broken, then it is free from error, since, as we have seen, after notifying the company that cash upon delivery of the property would be required and a consummation of the contract in that way insisted upon within a time named, the company's attitude was such as to indicate that it refused to do so.

The court used language to the jury to the effect that, since respondent elected to sell the property, though it was bound in making the sale to proceed in such a manner as was rea-

sonably calculated to secure the best price obtainable therefor, it was not bound to accept the highest price offered regardless of its own interests, so long as the rejection of such price was consistent with the interests of the navigation company. As applied to the facts to which the court undoubtedly referred, the instruction was certainly free from error. Moreover, we fail to see any error in it as the statement of an abstract proposition of law. Certainly, respondent was not obliged to accept an offer to buy the property on credit. The court might well have gone further and said that respondent was not bound to sell on credit at all. The right to make the sale necessarily included the right to make it so as to convert the property into money, not into mere promises to pay money.

We apprehend that if at all points the court had kept definitely in mind that an election to treat the contract as broken was one thing, and choosing and enforcing a remedy for the loss caused by the breach another thing, and that the manner of enforcing it went only to the character of the result as evidence of the amount of the loss caused by the breach, the instructions given to the jury would have been somewhat different. But we fail to perceive any prejudicial error in those we have specially referred to, or any of the others. Justice seems to have been done in the case.

*By the Court.*—The judgment is affirmed.