Smith v. Goldberg, 139 Wis. 423.

SMITH and others, Respondents, vs. GOLDBERG, Appellant.

*April 20—May 11, 1909.*

*Sales: Contracts: Construction: Ambiguity: Breach of contract: Negotiations for settlement: Notice of breach: Damages: Evidence: Duty to return property: Instructions to jury.*

1. A stipulation in a contract that if a stallion purchased should not prove an average foal getter the seller would replace him with another horse of the same breed and age "equally as good," while ambiguous, is made certain by evidence that the intention of the parties was that the substituted horse should comply with the warranty as to being an average foal getter.
2. Negotiations of settlement, by substitution of another article in place of that contracted for, in no way modify the contract or

relieve from performance. At most their effect is to delay the time of performance, and the reasonableness of that time is for the jury.

3. A notice served before action brought stating that a contract of sale was rescinded, that such rescission was because of breach of warranty in the sale of a stallion and because the seller had failed to exercise and comply with contract requirements on such breach, that the stallion was held subject to the seller's order and risk, accompanied with offer to return the stallion on refunding the purchase money, and that suit would be brought unless the purchase money was paid, is not a rescission in the ordinary sense, but rather a notice of claim for breach and demand of the purchaser's damages under the contract.

4. On breach of a contract of sale of a stallion, the agreement being on failure of warranty to replace him with another equally good, or refund the purchase price "and take the horse back," no proof of damages is necessary, nor is the return of the stallion a condition precedent to the purchaser's right to recover. It is enough that he offers to return, and holds the stallion subject to the seller's order.

5. It is not error to refuse a requested instruction which has no basis in the evidence.

APPEAL from a judgment of the municipal court of Marathon county: LOUIS MARCHETTI, Judge. *Affirmed.*

This action was brought upon a special contract for the sale of a stallion by the defendant to the plaintiffs for the agreed price of $600. The contract contained the following stipulation or warranty:

"I warrant the Percheron stallion, this date traded to *A. W. Smith, B. H. Wright,* and *W. H. Hanchett,* to be an average foal getter if rightly managed, and in case he does not prove to be so I will replace him with another horse of the same breed and age, equally as good, or refund the six hundred dollars ($600), and take the horse back at my option. This guaranty to hold good one year from date."

It is alleged in the complaint that the stallion was not according to warranty and not an average foal getter when rightly managed, and the plaintiffs so notified defendant. The original complaint alleged a rescission of the contract, but this allegation by leave of court was stricken out, leaving

the complaint one for breach of contract. Defendant in his answer admitted the contract of sale, denied the other allegations of the complaint, and further alleged that he offered plaintiffs another stallion which complied with his agreement, but that plaintiffs refused to accept him; that negotiations between plaintiffs and defendant respecting supplying another horse continued until November, when defendant offered plaintiffs their choice of three stallions which complied with the warranty, but plaintiffs refused to accept any of them; and that defendant had been always ready and willing to comply with the terms of the warranty. At the close of the evidence defendant moved for a directed verdict, which was denied. A general verdict was returned in favor of plaintiffs, assessing their damages at $600 and interest at six per cent. from March 16, 1907. After verdict defendant moved for judgment dismissing the complaint and for a new trial. These motions were denied and judgment entered for plaintiff on the verdict, from which this appeal was taken.

The cause was submitted for the appellant on the brief of *Kreutzer, Bird & Rosenberry,* and for the respondents on that of *Regner & Ringle.*

KERWIN, J. The provisions of the contract of sale respecting the stipulation that, if the stallion purchased should not prove to be an average foal getter, the defendant would replace him with another horse of the same breed and age "equally as good," is rather ambiguous; but it is clear from the evidence that the intention of the parties was that the horse substituted should comply with the warranty as to being an average foal getter. This is not denied by defendant. So it follows that by the terms of the contract the defendant was bound to furnish an average foal getter of the same breed and age as the horse first furnished under the contract or refund the $600 and take the horse back. It is first claimed by appellant that he had not breached the warranty by failure

to replace the horse, because of negotiations between plaintiffs and defendant. These negotiations in no way relieved the defendant from the performance of his contract. After notification by plaintiffs in June, 1907, that the horse was not according to warranty, the defendant suggested that the matter stand until the fact of sterility be surely shown, and after this there were some negotiations as to whether the plaintiffs might not take a younger horse and pay the difference in value. But these negotiations did not modify the original contract or relieve the defendant from performance of it. At most, the negotiations amounted to an effort to settle the matter by acceptance of a more valuable horse than the one agreed upon and payment of the difference in value if the parties could get together on such a deal, and the only effect such negotiations could have was to reasonably delay time of performance on the part of defendant in replacing the horse, in view of an effort to agree. Whether a reasonable time had elapsed, in view of all the facts and circumstances of the case, to enable the defendant to perform, was fairly submitted to the jury, and in finding for the plaintiffs the jury necessarily found that such reasonable time had elapsed before this action was commenced.

It is further insisted under this head that no sufficient notice was given the defendant, that plaintiffs' notice was one of rescission, and that thereby the defendant was put to the defense of a claim of rescission and not a claim for nonperformance, and hence there was no evidence to submit to the jury on the question of nonperformance. While the notice served before action brought stated that the plaintiffs rescinded the contract of sale made of the stallion, it further stated that such rescission was because the stallion was not an average foal getter as guaranteed in the agreement, and because the defendant had failed to live up to the agreement by exercising his option to replace the stallion or refund the $600 purchase price. The notice further stated that the stal-

lion was held subject to the order of defendant and that plaintiffs offered to return him on payment of the $600, and demanded that defendant refund the $600, and that thereafter the stallion was held at the risk of defendant, and that unless the $600 was paid within five days suit would be commenced for the recovery thereof. This notice was not a rescission of the contract in the ordinary sense of rescission, but rather a notice of claim for breach and demand of plaintiffs' damages under the contract. This notice was served on the 9th day of December, 1907, and the action commenced on the 31st day of December, 1907. The matter of compliance with the contract had been under consideration between the parties from May to December, 1907, the plaintiffs insisting that defendant should comply with his contract, until finally the notice of December 9th was served, and after that nothing was done by defendant to fulfil his contract. We think there was ample evidence to justify submission to the jury of the question of nonperformance of the contract by defendant.

It is further insisted by appellant that, the contract having been rescinded by the plaintiffs, no cause of action for breach existed, and that this is an action upon the contract for breach and cannot be maintained. This contention is based upon the idea that the notice heretofore referred to operated as a rescission of the contract; but, as before observed, the notice was not the ordinary rescission, but a declaration of the plaintiffs' purpose to hold defendant upon the contract, and this involved the return of the horse, which was not in compliance with the contract, upon payment of $600, upon failure of defendant to replace the horse. No proof of damages was necessary. Proof of the breach established the plaintiffs' right to recover $600. This amount the defendant agreed to pay in case the horse sold was not as warranted and another in compliance with the warranty was not furnished. The plaintiffs are suing for specific damages stipulated to be paid in case of breach. *Park v. Richardson & B. Co.* 81 Wis. 399,

51 N. W. 572; *White v. Miller* (Iowa) 105 N. W. 993. But it is argued that the plaintiffs should first return the horse as a condition precedent to their right to recover the $600. This, however, is not the language of the contract. It provides that the defendant shall refund the $600 and take the horse back. The plaintiffs have offered to return the horse to defendant, and hold it subject to his order. That is all they can reasonably be expected to do under the contract. *E. T. Kenney Co. v. Anderson* (Ky.) 81 S. W. 663; *Osborn v. Rawson,* 47 Mich. 206, 10 N. W. 201; *Hall v. Ætna Mfg. Co.* 30 Iowa, 215. The charge of the court that the measure of damages is $600 was correct.

It is further argued that there was no right of rescission in the plaintiffs and that they could not rescind, and that they did not in fact make an unqualified offer to rescind. But the difficulty with this argument is that the plaintiffs' case is not based upon the ordinary rescission, but upon liability under express contract, which liability they seek to enforce in this action. The defendant was bound to pay the $600 and take the horse. On payment the defendant became at once entitled to the horse. There is no claim made but that plaintiffs were able, ready, and willing to deliver him upon such payment being made. Until they refused to deliver the horse there was no default on their part. *McWilliams v. Brookens,* 39 Wis. 334. On the showing made the defendant could have received the horse immediately upon payment of the $600, and this was his contract—to pay the money and take the horse back. This case is quite different from those cited in the brief of counsel for appellant, notably *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *Boothby v. Scales,* 27 Wis. 626; and *Parry Mfg. Co. v. Tobin,* 106 Wis. 286, 82 N. W. 154. In these cases the question was one of ordinary rescission and right to recover upon such rescission, independent of any express promise to pay the purchase money back in case of breach of warranty. In *Boothby*

*v. Scales, supra,* it was held as matter of law that the offer to return came too late. In *Parry Mfg. Co. v. Tobin, supra,* it was held that in case of breach of warranty on sale to defendant he had two remedies, namely, one to return the defective article and recover the sum paid, with interest, or to retain the article and, if sued for the price, allege and prove the breach and have damages allowed by way of recoupment or counterclaim. In *Smeesters v. Schroeder, supra,* the case was one where the question arose as to the right, on breach of contract, to elect to stand upon the contract and recover for the breach, or to rescind the contract and upon return of what he had received recover back that with which he had parted, or its value, and that in case of rescission the contract went out of existence. But in the case before us the $600 recovered is stipulated in the contract as the amount which the defendant agrees to pay in case he fails to replace the horse in compliance with the contract.

The doctrine laid down in *Park v. Richardson & B. Co.* 81 Wis. 399, 51 N. W. 572, is applicable here. In that case defendant sold a furnace to plaintiff, and stipulated in the contract that if it did not work satisfactorily he would substitute a new one in compliance with the warranty or remove the furnace and refund the purchase price. It was held that the plaintiff had two remedies: (1) To notify defendant and demand removal of the furnace, and in case of failure to furnish a new one to bring an action to recover the purchase price; or (2) waive the right to have it removed and bring an action for breach of warranty. The court said:

"This action is in the nature of an action for rescission, though differing from an ordinary rescission because it is expressly provided for by the contract itself, and consequently governed thereby. It is apparent that in this case the damages would, under the terms of the contract, be the purchase money paid, with interest."

Whether the present suit be called one in the nature of an action for rescission, or for breach of contract in failure to

replace the horse or pay the $600, is wholly immaterial, be-cause by the terms of the contract itself the defendant has expressly promised to pay $600 or furnish a horse in accordance with the contract. He has done neither, and the plaintiffs have recovered the $600 and interest.

Error is assigned because the court refused to give the following instruction:

"If *Mr. Goldberg* was ready and willing to give plaintiffs a better horse than Pluton, and was willing to exchange such better horse for Pluton for an additional price, which was commensurate with the difference in the horses, then he has fully complied with his contract."

There was no error in the refusal to give this instruction. It is based upon the theory that the contract had been modified by an agreement to take a better horse in exchange for the one furnished for an additional price. There is no basis in the evidence for such instruction. The court did instruct the jury that, if the defendant was justified in believing the plaintiffs desired to take time to negotiate and see whether they could not agree on some new substitution which would be mutually satisfactory, then the plaintiffs cannot claim a failure to live up to the contract while such negotiations were pending. This instruction was as favorable to defendant as he was entitled to under the evidence. We think the case was fairly tried and no error prejudicial to the defendant committed.

*By the Court.*—The judgment of the court below is affirmed.

MARSHALL, J. I cannot see that it is logical to dispose of this case upon the theory that the recovery is based, not on rescission, but on something in the nature of rescission. Either there was rescission or there was not. There is no middle ground. If there was rescission the proper measure of damages was the consideration for the horse purchased,

*i. e.* the $600 paid and the value of the horse given with the $600. If there was no rescission, the proper measure of the damages was the difference between the value of the stallion which did not comply with the warranty and the value of such an animal as was agreed upon.

I am not unmindful that in *Park v. Richardson & B. Co.* 81 Wis. 399, 51 N. W. 572, language was used to the effect that in case of purchase of an article with warranty coupled with an agreement that in case of its not proving to be as represented the seller will furnish a new one or take the thing purchased back and refund the purchase money, the amount agreed to be refunded stands as stipulated damages for the breach and that the action therefor is in the nature of rescission; but the very suggestion of rescission implies abrogation of the contract, rescission strictly so called, not something in the nature of rescission. There is no such thing as an action for rescission or in the nature of rescission other than an equitable action. In case of an action at law, involving rescission, the rescission occurs as a condition precedent to the right of action. It precedes the action instead of being the purpose thereof.

In this case it was agreed, in effect, that in case of the horse not proving to be of the kind agreed upon, the seller would substitute one of such kind or repurchase the defective animal at the price of $600, the seller to have the option which course to pursue. Having neglected to do either within a reasonable time, obviously, as a matter of law, the seller had the same remedies as in any case of an executory contract for the sale of an article where the subject of the sale is ready for delivery and the executory vendee neglects or refuses to take the same and pay the agreed price, viz.: store the property for the buyer or keep the same, using proper care in respect thereto, and sue for such agreed purchase price, in this case $600; or sell the property, using ordinary care to obtain the best price reasonably obtainable therefor, thereby liquidating

the damages, and sue for the deficiency; or keep the property as his own and recover the difference between the contract price and the market price at the place of delivery, or rescind the contract *in toto* and sue for damages, to be assessed under the well-known rule in *Hadley v. Baxendale,* 9 Exch. 341, recognized by this court as universally applicable, *i. e.* such as "may reasonably be supposed to have been in the contemplation of both parties when the contract was made as the probable result of the breach of it." That, as I understand it, has been very definitely declared by this court. *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368.

In this case it seems the plaintiffs elected to hold the horse subject to the order of defendant and sue for the purchase price of $600. They might have sold the property, as in *Pratt v. S. Freeman & Sons Mfg. Co., supra,* using reasonable care to protect the interests of the defendant, and sued for the deficiency. As they chose not to thus liquidate the damages but to sue for the full price at which defendant agreed to buy back the horse, storing the animal with themselves for the defendant, it is still their property and plaintiffs, doubtless, may yet sell it, in a proper manner, as indicated in the case referred to, and apply the net amount obtained; the gross amount less reasonable expenses for keeping the animal and making the sale, upon the judgment against defendant, or he may yet have the horse or its reasonable value, being liable for the reasonable expense of the plaintiffs as bailees. Thus I concur in the result of the appeal but place such result upon the reasoning indicated.