BERRY and another, Respondents, vs. WADHAMS OIL COMPANY, Appellant.

*March 18—April 9, 1914.*

*Sales: Oral evidence affecting written contract: Implied warranty that goods are merchantable: Breach by vendee: Liquidating damages.*

1. Where a written contract of sale does not show that the sale was made by sample, evidence that such was the fact is not admissible to affect the contract in any way.
2. Although an executory contract of sale of goods at a distance, not open to the inspection of the vendee, contains no express warranty of quality, there is an implied warranty that the goods are merchantable in quality; hence evidence that gasoline tendered by the vendor under such a contract was unmerchantable because of its obnoxious odor was admissible.
3. Evidence that the term "74-degree gasoline" in a written contract of sale meant, as used in the trade, a product with certain qualities as to color and smell, did not tend to vary the contract and was competent.
4. If the vendee in an executory contract of sale repudiates it without just cause, the vendor may properly treat the contract as terminated and sell the property for cash for the purpose of liquidating the damages.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This was an action brought by vendor against vendee to

recover damages for the breach of two contracts for the sale and delivery of gasoline. A verdict for the plaintiffs was directed, and the defendant appeals. It appeared without dispute that on January 23, 1911, the parties made two written contracts, one for the sale of 150,000 gallons of "74-degree gasoline at 11 cents per gallon, f. o. b. refinery . . . , said gasoline to be not less than 74-degree gravity and to be shipped in equal quantities each month as follows, about 12,000 gallons;" the other for the sale of 30,000 gallons of "76-degree gasoline at 11¾ cents per gallon, f. o. b. refinery," to be shipped in equal quantities monthly, at the rate of about 3,000 gallons per month. It appeared further that three carloads of the 74-degree gasoline were shipped and delivered by the plaintiff to the defendant, and a fourth car of the same kind tendered, which was refused by the defendant on account of its strong odor. Considerable correspondence passed between the parties, and the defendant declined to receive any gasoline of either of the kinds contracted for if it bore the strong odor of the 74-degree gasoline which had already been delivered. The gasoline which plaintiffs proposed to deliver under both of the contracts possessed the same odor, and both parties understood this fact, hence no tender of the 76-degree gasoline was made, though plaintiffs were ready and willing to tender delivery of the same. The plaintiffs then sold out the entire undelivered balance of the gasoline covered by the two contracts for eight and three-fourths cents per gallon, and brought this suit to recover their damages.

It was undisputed that there were three different commodities known as gasoline, i. e. refinery or straight-run gasoline, compressor or casing-head gasoline, and blended gasoline, the latter kind being a recently developed variety, the qualities of which were unknown to the defendant, and which was produced only by the plaintiffs and one other concern. The defendant by answer claimed that the sale was by sample and that the gasoline tendered was not equal in quality to the sample by reason of its obnoxious odor. It appeared that

at the time of the making of the contracts both parties understood that their dealings related to blended gasoline, and the defendant, against objection, offered evidence tending to show that the sale was by sample and that the sample furnished was inoffensive in odor. The defendant also offered evidence tending to show that the words "74-degree gasoline" had a definite and well established meaning when used in the trade, namely, a waterwhite gasoline of sweet or nonoffensive odor. The defendant also offered evidence to the effect that gasoline must be free from the offensive odor which the plaintiffs' gasoline possessed in order to be merchantable. All of this evidence was finally stricken out by the court, and a verdict for the plaintiffs for damages computed by the court was directed and rendered.

For the appellant there was a brief signed by *Marshutz & Hoffman,* attorneys, and *J. H. Marshutz* and *W. C. Quarles,* of counsel, and a reply brief by *Marshutz & Hoffman,* attorneys, and *J. H. Marshutz* and *Quarles, Spence & Quarles,* of counsel; and the cause was argued orally by *Mr. Marshutz* and *Mr. I. A. Fish.*

For the respondents there was a brief by *Speer, Weigle & Moore* and *Walter Drew,* and oral argument by *Mr. Drew.*

WINSLOW, C. J. In this case it is held:

1. The contracts of sale being in writing and not showing that the sales were made by sample, evidence that such was the fact is not admissible to affect the contracts in any way. *Wiener v. Whipple,* 53 Wis. 298, 10 N. W. 433.

2. This being an executory sale of goods at a distance, not open to the inspection of the vendee and there being no express warranty of quality, there was an implied warranty that the goods were merchantable in quality, and hence evidence that the gasoline tendered was unmerchantable on account of its obnoxious odor was admissible and should not have been stricken out. *Merriam v. Field,* 24 Wis. 640;

*T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513.

3. The word "gasoline" being generic and in a sense indefinite because it covers a number of the lighter products of petroleum differing in their characteristics, it was competent for the defendant to introduce evidence tending to show that the expression "74-degree gasoline," as used in the trade, meant a product with certain qualities as to color and smell. This evidence does not tend to vary the contracts, but to translate them from the language of trade into the language of people generally. *Burstein v. Phillips,* 154 Wis. 591, 143 N. W. 679.

4. The contracts being executory, if they were repudiated by the defendant without just cause, the plaintiffs might properly treat them as terminated and sell the property for cash for the purpose of liquidating the damages. *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920; *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368.

*By the Court.*—Judgment reversed, and action remanded for a new trial.