McDonald and another vs. Gardner.

*October 14 — October 31, 1882.*

*Construction of contract for sale of lumber — Evidence — Instructions to jury.*

By a written contract G. agreed to sell and deliver to M. & S., at a certain time, " all the good lumber to be cut from six or seven hundred thousand feet of choice large white pine growing amongst hard wood, and size of timber is represented and sold as logs of a size of two and one half logs per 1,000 feet, the same

McDonald and another vs. Gardner.

to be well sawed into plank [of a specified thickness], and no plank to be put in any poorer than the present plank nailed up as a sample; . . . for shop use; all intended to be good shop lumber, including common, third clear, and clear, and second clear; and all the coarse logs and defective logs to be made into shingles, and the amount of lumber suitable to ship to fill this order is estimated at four to five hundred thousand feet, or about sixty-six per cent. of the log scale." It was further provided that "the guarantee to deliver the above-named lumber is based upon having say a fair run of sleighing so it is possible to put said logs in on sleighs, by making extra effort in due season. In case we do not have sleighing so as to make it possible to put them all in, then only so much as was got in will be supposed to fill the contract, but with fair sleighing the guarantee is understood to hold good." In an action by M. & S. for a breach of the contract by delivery of inferior lumber and by failure to deliver the agreed amount, *Held:*

(1) M. & S. were not bound under the contract to take all the merchantable lumber which might be tendered, but such only as fulfilled the several requirements specified.

(2) Evidence that before the making of the contract one H. had agreed to deliver to the defendant G. a large quantity of logs, and that at the time of the making of the contract it was agreed between M. & S. and G. that if the latter should deliver to M. & S. all the lumber sawed from the logs which might be delivered to him by H., the same should be in full satisfaction of the contract, was inadmissible as contradicting the written contract.

(3) Such evidence having been admitted, against objection, together with evidence that H. had failed to perform his agreement, it was error to refuse to instruct the jury that such agreement with H. and his failure to fulfill it, constituted no defense to the action.

(4) Instructions to the effect that "on the question of sleighing it is not whether the sleighing on any particular road was good or bad, but whether the general run of sleighing . . . was a fair run of sleighing and the defendant could, by making extra effort, get in the amount of logs specified," and that if the sleighing "was of such a character that lumbermen at that point were able generally, by making extra effort, to get in logs, the defendant cannot be excused from a performance of this contract on the ground of lack of snow," requested by the plaintiff, should have been given.

APPEAL from the Circuit Court for *Marathon* County.

Action to recover damages for the breach of the following written contract:

"Be it known that I, *John Gardner*, of Spencer, Wisconsin, party of the first part, and *McDonald & Stewart*, of Fond du Lac, Wisconsin, party of the second part, that I, *John Gardner*, sell and guarantee to deliver on board of cars at this place, when dry and in good condition to ship, all the good lumber to be cut from six or seven hundred thousand feet of choice, large white pine growing amongst hard wood, and size of timber is represented and sold as logs of a size of two and one half logs per 1,000 feet, the same to be well sawed and well piled to dry straight, and to pile open and with two-inch crossings, or say two thicknesses of six-inch fencing strips between each tier of plank. The lumber to be sawed into plank one and one fourth, one and one half, and two inches thick; the one and one fourth and one and one half inch to be good full thickness, so they will measure the above measurements when dry, and no plank to be put in any poorer than the present plank nailed up as sample in Mr. James Robinson's mill; for shop use; all intended to be good shop lumber, including common, third clear, and clear, and second clear; and all the coarse logs and defective logs to be made into shingles; and the amount of lumber suitable to ship to fill this order is estimated at four to five hundred thousand feet, or about sixty-six per cent. of the log scale. The proportions to saw of each thickness to be done to suit second party, as they may direct.

" It is further agreed that all of the above plank shall be in pile by the 1st day of May next, and that the sawing commence by the 1st day of January next and continue in proper proportions for each month, or say one fourth in January, one fourth in February, one fourth in March, and one fourth in April; and to commence shipping same on or about May 1st next, and to ship as fast as party of the second part will require. The price to be ($12) twelve dollars

per 1,000 feet on board of cars, and payments as follows: Six dollars per 1,000 feet for all sawed and piled during each and every month, an estimate to be made of it the last of each month, and ($3) three dollars per 1,000 feet by accepting draft about April 1st, payable May 1st, on all the lumber in pile and in log to be sawed in April, and the remaining ($3) three dollars per 1,000 feet as lumber is shipped. The guarantee to deliver the above-named lumber is based upon having, say, a fair run of sleighing, so it is possible to put said logs in on sleighs by making extra effort in due season. In case we do not have sleighing so as to make it possible to put them all in, then only so much as was got in will be supposed to fill the contract; but with fair sleighing the guarantee is understood to hold good. It is further understood that, in case *McDonald & Stewart* wish it, that I, *J. Gardner*, will insure the lumber for interest for money advanced, and loss, if any, payable to them, party of the second part; but insurance policy not to be out of my pocket.

"We, *McDonald & Stewart*, agree to fill our part of the above agreement, and the terms and conditions therein specified shall be binding on each party to this contract.

" *Spencer, Wisconsin, December 18, 1879.*

" JOHN GARDNER.

" McDONALD & STEWART.".

The breach alleged consisted in delivering a quality of lumber inferior to that called for by the contract, and also the failure to deliver the amount of lumber called for by the contract. The complaint also alleged that there had been a fair run of sleighing, so that the defendant could have performed the contract had he made the extra effort in due season, named in the contract. The answer admits the making of the contract and the delivery of the amount of lumber, as stated in the complaint, but denies each and every other allegation in the first cause of action stated in the complaint. The answer also, in effect, alleges that at and before the mak-

ing of that contract the defendant made another with one Haywood, by which the latter agreed to deliver to the defendant at Spencer five or six hundred thousand feet of pine logs similar to those mentioned in the contract with the plaintiffs, and with which he and the plaintiffs expected the defendant would supply and perform the plaintiffs' contract, but that Haywood failed to so deliver, and, in consequence of which, the defendant was unable to perform his contract with the plaintiffs, and of which fact the defendant notified the plaintiffs between January 20 and 25, 1880; and that at the time the plaintiffs could have procured other lumber in the vicinity for $12 per thousand feet.

On the trial a verdict was rendered for the defendant, which the plaintiffs thereupon moved to set aside, and for a new trial upon the minutes of the court, because of the errors in the admission and rejection of evidence, and for rulings and decisions of the court upon the trial, and because of error in the charge of the court to the jury, and in the refusal to charge as requested by the plaintiffs, and other errors on the trial, as shown by the record. The motion was denied and the plaintiffs excepted. Thereupon judgment was entered for defendant, from which the plaintiffs appealed

*Geo. E. Sutherland,* for the appellants.

The cause was submitted for the respondent on the brief of *G. W. Cate.*

CASSODAY, J. The judgment must be reversed for several errors committed on the trial. Some of these rulings will be noticed.

1. One of the plaintiffs, among other things, in effect, testified that the lumber received by the plaintiffs, under the contract in suit, was not as good as that called for by the contract; that two-thirds of it was common shop lumber, and while explaining the difference in value between the lumber actually received and that called for by the contract,

the defendant objected to the evidence as incompetent and inadmissible, and claimed that the expression "good lumber," in the contract, meant anything that is "merchantable." The court replied: "I think the contract means the taking of all merchantable lumber." The witness stated that common lumber meant all sound lumber above culls. In this connection, and against the objection of the defendant, counsel attempted to prove by the plaintiff witness whether all common lumber was good shop lumber; whether there was among lumbermen a classification or grade of lumber known as shop common; whether among lumbermen common lumber intended for shop use would or would not embrace all grades of what was known as common lumber; whether common lumber or all sound lumber above culls would be good shop lumber; whether there was among lumbermen, in common use, a classification of lumber known as shop lumber, or lumber for use in shops; whether all the lumber received by the plaintiffs under the *Gardner* contract was good for shop use; whether all the lumber received by the plaintiffs under the *Gardner* contract was good shop lumber. Each of these different classes of testimony was excluded, and the plaintiffs excepted. The correctness of these rulings must be determined by the contract. That called for all the good lumber to be cut from six or seven hundred thousand feet of choice large white pine growing among hard wood, and size of timber represented and sold as logs of a size of two and one half per thousand feet; the same to be well sawed and well piled to dry straight, and to pile open and with two-inch crossings, or say two thicknesses of six-inch fencing strips between each tier of plank. The lumber was to be sawed into plank of the several thicknesses named, and no plank was to be put in any poorer than the plank then present and nailed up as a sample in James Robinson's mill, and the lumber to be so sawed into plank was to be for shop use, and all intended to be

McDonald and another vs. Gardner.

good shop lumber, including common, third clear, clear, and second clear. Manifestly the plaintiffs were not bound under the contract to take all the "merchantable" lumber which might be tendered. That was not made the test by the contract. In fact, several different tests were expressly stipulated for. It was to be taken from choice large white pine, grown among hard wood, and of the size of timber represented and sold as logs of a size of two and one half logs per thousand feet. It was all to be well sawed and well piled in the manner designated. It was all to be sawed into plank of the several thicknesses named. It was to contain no plank poorer than the sample. It was expressly contracted for shop use. The clause "all intended to be good shop lumber, including common, third clear, and clear, and second clear," is somewhat ambiguous, yet taken with the context it must be construed as intending to include all such or so much of the common, third clear, clear, and second clear as should be good shop lumber, and fulfill the several requirements above named.

This construction is confirmed by the clause which follows, whereby all the coarse and defective logs were to be excluded, and made into shingles, leaving the estimated amount of lumber suitable to fill the contract only about sixty-six per cent. of the log scale. Certainly the plaintiffs had the right to show by competent evidence that the lumber furnished did not fulfill the several requirements contracted for. It cannot be presumed that there was no merchantable lumber which would not come within the stipulations of the contract. It appears from the evidence that during the time the plaintiffs were receiving the lumber delivered to them under the contract, they several times notified the defendant that the quality of the lumber was inferior to that called for by the contract, and that the plaintiffs would look to him for damages, because the lumber received was not up to the standard. This being so, the court could not arbitrarily shut

out the evidence on the ground of waiver, and the learned counsel for the defendant does not so contend. In fact, this court has gone still further, and held such liability without notice, as will appear from *Ketchum v. Wells*, 19 Wis., 25; *Bonnell v. Jacobs*, 36 Wis., 59; *Morehouse v. Comstock*, 42 Wis., 626.

2. The counsel for the plaintiffs requested the court to instruct the jury that "the fact that the defendant may have had a contract with Haywood, or any other particular party, who may have failed to fulfill, constitutes no defense to this action." The court refused to so instruct, and the plaintiffs excepted. The defendant's counsel argues that the second part of the answer setting up the Haywood contract states a defense, and that the plaintiffs "having a contract for a certain amount of lumber in writing it would be competent for the parties to agree to accept a particular lot of logs in discharge and satisfaction of the prior written contract, though less in quantity, and the performance of the last contract would be a discharge of the former." To support this, three cases are cited from this court — *Jones v. Keyes*, 16 Wis., 562; *Jilson v. Gilbert*, 26 Wis., 637, and *Merriam v. Field*, 29 Wis., 592. But those cases are clearly distinguishable. The allegation of the answer is that the Haywood contract was executed "at and before the execution of" the contract between the plaintiffs and the defendant, and that if the defendant delivered to the plaintiffs "all the lumber sawed from the logs which might be delivered to the defendant by said Haywood under his and the defendant's said contract, and piled as provided in the said paper, Exhibit A (contract in suit), that the same would and should be in full satisfaction of said contract, Exhibit A." Such was the tendency of the evidence given on the part of the defendant against the objection of the plaintiffs. This can be justified only upon the ground that the plaintiffs were not only bound to take the lumber manufactured from the Haywood logs, but that Haywood's

failure and notification thereof to the plaintiffs excused the defendant from further performance. Such evidence clearly contradicted the written contract, and should have been excluded. *Foster v. Clifford,* 44 Wis., 569; *Cooper v. Cleghard,* 50 Wis., 113; *Hubbard v. Marshall,* id., 322; *Gillmann v. Henry,* 53 Wis., 470, and cases there cited. Undoubtedly evidence was permissible to show what timber, if any, the parties had in contemplation at the time, or any other fact or circumstance which would properly aid in construing the contract; but this did not authorize a contradiction of the written contract, nor evidence tending to relieve one of the parties from performing it, nor the substitution of a prior or contemporaneous parol agreement for the written contract. But the learned counsel for the defendant virtually concedes that the failure of Haywood to fill his contract did not discharge the defendant from fulfilling his contract, and claims that the court did not try the case upon that theory. But the court nowhere informed the jury that the failure of Haywood to perform his contract would not discharge the defendant; and there was evidence from which such an inference might be drawn. This being so, and the plaintiffs' counsel having requested the instruction in time, it should have been given, and its refusal was error. The rule is that a party has a right to a direct and positive instruction upon a point material to the issue and the evidence, if requested in time, when the same is not covered by the general charge, or is left vague or indefinite. *Campbell v. Campbell,* 54 Wis., 98, and cases there cited.

3. The court was requested to charge the jury that, " on the question of sleighing, it is not whether the sleighing on any particular road was good or bad, but whether the general run of sleighing at Spencer, Wisconsin, during the winter of 1879–80 was a fair run of sleighing, and the defendant could, by making extra effort, get in the amount of logs specified in the plaintiff's contract." " If you find that the sleighing

at Spencer, Wisconsin, was of such a character that lumbermen at that point were able generally, by making extra effort, to get in logs, then you must find that the defendant cannot be excused from a performance of this contract on the ground of lack of snow." These instructions were each refused by the court, and the plaintiffs excepted. In view of the portions of the contract relating to the sleighing, and the nature of the evidence given, we think these requests should each have been granted. The agreement to deliver the whole amount of lumber contracted for was conditional upon having a fair run of sleighing, so as to make it possible to put the logs in on sleighs by making extra effort in due season; but in case the sleighing should be such as to make it impossible to put them all in, then the defendant was only required to put in so much as such effort would make possible. Such we conceive to be the true meaning of the contract, although its language, in this regard, is somewhat obscure and ambiguous. Such being the stipulations of the contract with respect to sleighing, the evidence, as well as the instructions, should have been in conformity with it. Certainly the defendant could not be relieved from the performance of his contract because the sleighing upon some particular road was bad, unless it should conclusively appear that it was impossible to get the logs in upon any other road. Nor was he bound to get in the full amount named in the contract merely because there was one particular road in that section of the country, in no way connected with the timber in question, in which there was plenty of snow and hence good sleighing. The defendant was not required to put in any logs on wagons, but only on sleighs. He was, however, required to deliver all that he could on sleighs, when there was fair sleighing, by making " extra effort in due season." To that end the evidence should have been aimed and the instructions confined.

There are, probably, other errors, but as they may not

occur upon another trial, it is unnecessary to consider them. For the reasons given the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— It is so ordered.