McMILLAN and another, Appellants, vs. Fox and another, Respondents.

*March 8 — April 23, 1895.*

*Contracts: Sale of chattels: Partial destruction: Full performance excused: Damages for nondelivery: Waiver: Rescission.*

1. Plaintiffs contracted to sell to defendants certain specified piles of lumber, varying in actual value from $8 to $20 per M., at the uniform price of $11 per M., title to vest in defendants upon delivery on the cars, and payments to be made within a certain time after each shipment. After some of the lumber had been delivered, a part of the remainder, worth $20 per M., was destroyed by fire while still in plaintiffs' possession but without their fault. With knowledge of the facts defendants went on with the contract and ordered and received all the remaining lumber at the contract price. *Held,* that plaintiffs were excused from performance of the contract as to that part of the lumber which was burned, and that defendants could not recover damages for the nondelivery thereof.

[2. Whether after the fire defendants were entitled to rescind the contract as to the lumber not yet delivered, is not decided.]

APPEAL from a judgment of the circuit court for Portage county: CHARLES M. WEBB, Circuit Judge. *Reversed.*

Action on contract for the balance of the contract price of lumber sold. The facts were not materially disputed. It appeared on the trial that the plaintiffs, on the 16th day of February, 1892, by written contract, sold to the defendants a quantity of pine lumber in piles and sheds in the yard of the plaintiffs at McMillan, Marathon county, estimated at from two to three million feet, at the uniform price of $11 per thousand feet loaded on cars at the yard. The lumber was of various grades, ranging in actual value from $8 per thousand feet to more than $20 per thousand feet. By the terms of the contract the shipping and receiving of the lumber was to commence at once, and not less than 100,000 feet was to be shipped and received during the first month, and thereafter not less than 200,000 feet per month, all to be

shipped and received before October 15, 1892. The defendants agreed to pay for the same at $11 per thousand within sixty days after the date of the invoice of each shipment. The title to the lumber was to remain in the plaintiffs until loaded on cars, and such loading was to be deemed a delivery.

Shipments began February 20, 1892, and on the 12th day of April following about 800,000 feet of lumber had been shipped. On that day an accidental fire destroyed a shed and its contents of dry lumber, being 210,000 feet, which was a part of the lumber contracted to be sold. The lumber so destroyed was some of the more valuable lumber, nearly all of it being worth more than $11 per thousand, and some of it being worth $20 per thousand or more. After this fire shipments of the lumber not burned continued. The defendants knew of the fire, and substantially what lumber was burned, but made no objection to going on with the contract. *Mr. Fox*, one of the defendants, testifies that *Mr. McMillan* asked him whether he was going on with the contract, and he answered, "Yes." The shipments of lumber continued until all the lumber sold and not burned was shipped, and it was all received by the defendants without objection, the last shipment being made December 22, 1892. The entire amount of lumber shipped and received under the contract was about 2,200,000 feet. The defendant *Fox* testifies: "We took lumber right along under this contract after the fire by the car at $11 per thousand."

When the delivery of lumber was finished there was unpaid for the lumber so delivered, at $11 per thousand, the sum of $2,159.84. This amount the defendants refused to pay, and this action was brought to recover that sum. The defendants by answer claimed that by the failure to deliver the lumber that was burned the plaintiffs could not recover on the contract, and further counterclaimed for the difference between the actual value of the lumber burned and the

contract price thereof. It was agreed that the actual value of the lumber burned was $4,339.25, and that the contract price thereof at $11 per thousand was $2,310, making the difference $2,029.25, and this amount the defendants claimed to recover under their counterclaim. The defendants also alleged that the fire was caused by the negligence of the plaintiffs.

A special verdict was rendered, by which it was found (1) that the amount unpaid on the contract price of the lumber was $2,159.84; (2) that the difference between the actual value of the lumber burned and its value at $11 per thousand was $2,029.25; (3) that the fire was not caused by the plaintiff's negligence. After this verdict was received, a motion for judgment for the plaintiffs thereon for $2,159.84 was overruled, and the court directed the jury to return a general verdict for the plaintiffs, with damages assessed at $130.59, which being done, judgment was rendered thereon, and the plaintiffs appealed.

For the appellants there were briefs by *Raymond, Lamoreux & Park*, and oral argument by *B. B. Park*. To the point that the burning of a part of the lumber without the fault of the plaintiffs relieved them from their obligations to deliver such part, as well as from all claims on the part of the purchasers for damages resulting from such nondelivery, they cited 2 Parsons, Cont. 672; *Williams v. Lloyd*, W. Jones, 179; *Lord v. Wheeler*, 1 Gray, 282; *Oakley v. Morton*, 11 N. Y. 25; Anson, Cont. (2d Am. ed.), 427; *Taylor v. Caldwell*, 113 Eng. C. L. 826, 836; *Powell v. D., S. & G. R. R. Co.* 12 Oreg. 488; *The Tornado*, 108 U. S. 342; *Walker v. Tucker*, 70 Ill. 527–543; *Wells v. Calnan*, 107 Mass. 514; *Singleton v. Carroll*, 6 J. J. Marsh. 527, 22 Am. Dec. 95; *Wolfe v. Howes*, 20 N. Y. 197; *Carpenter v. Stevens*, 12 Wend. 589; *Gould v. Murch*, 70 Me. 288; *Kelly v. Bliss*, 54 Wis. 187; *Gould v. Thompson*, 4 Met. 224; *Hyland v. Paul*, 33 Barb. 241; *Thompson v. Gould*, 20 Pick. 134; *Curtiss v.*

*Prinderville,* 53 Barb. 186; *Dexter v. Norton,* 55 id. 272; *S. C.* 47 N. Y. 62; *Booth v. Spuyten D. R. M. Co.* 60 N. Y. 487–491; *Spaulding v. Rosa,* 71 N. Y. 40–44; *Kein v. Tupper,* 52 id. 550–555.

For the respondents there were briefs by *Cate, Jones & Sanborn,* and oral argument by *D. Lloyd Jones.* They contended, *inter alia,* that the destruction of a part of the property after partial performance of the contract, while it may be an excuse for the nonperformance in the sense that damages solely for want of a specific performance could not be recovered, does not excuse the plaintiffs from the payment of any special or actual damages (compensation) incurred by defendants by reason of the breach. *Eddy v. Clement,* 38 Vt. 486. Plaintiffs were not entitled to recover more than the actual value of the lumber delivered without showing a full performance, for the contract to pay $11 per M. was dependent upon plaintiffs' contract to deliver the entire lot. *McDonald v. Bryant,* 73 Wis. 20; *Remy v. Olds,* 34 Pac. Rep. 216.

WINSLOW, J. The contract in question was an executory contract of sale of certain specific piles of lumber. It contemplated a delivery from time to time, as ordered by the defendants, of car-load lots, to be paid for within a certain time after delivery, and so was manifestly severable. As each car-load lot was delivered the contract became, so far as plaintiffs were concerned, an executed contract of sale of the lot so delivered. *Gill v. Benjamin,* 64 Wis. 362. These principles cannot be doubted.

The contract was for the sale of specific property, and hence must have contemplated the continued existence of that property as an implied condition of its performance. In such case the parties are excused from carrying out the contract in case, before breach, performance becomes impossible from the destruction of the thing without fault of

the contractor. *Taylor v. Caldwell,* 113 Eng. C. L. 826; *Dexter v. Norton,* 47 N. Y. 62.

By the accidental fire, without fault of the plaintiffs, they were therefore excused from delivering the lumber that was burned. The situation at that time was this: As to the lumber already delivered the contract had been severed and *pro tanto* executed; as to the lumber burned it had been terminated and both parties excused from performance. The only question left was as to the lumber which had not been burned and was yet undelivered. The most that can be claimed for the defendants is that, by reason of the fire having destroyed an important portion of the property, they were entitled to rescind the contract so far as it related to the lumber not yet delivered. Conceding that they had this right (which we do not decide), it appears by their own testimony that they did not exercise it. Knowing the facts, they voluntarily went on, ordered and received all the remaining lumber at the contract price, and necessarily by each such order and receipt executed so much of the contract. By these acts they undoubtedly waived any right which they might have had either to insist on full performance or to claim damages for the nondelivery of the part which was burned.

The plaintiffs should have had judgment for the amount unpaid for lumber delivered at the contract price of $11 per thousand feet. The facts have all been determined without error, and no new trial is necessary.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment for the plaintiffs in accordance with this opinion.