Woodman v. Blue Grass Land Co. 125 Wis. 489.

WOODMAN, Appellant, vs. BLUE GRASS LAND COMPANY, Respondent.

*April 8—October 3, 1905.*

*Vendor and purchaser: Contracts: Breach: Rescission: Recovery of earnest money: Election: Corporations: Recording articles: Failure to index: Equity: Specific performance: Marketable title.*

1. Where one party to an executory contract, before the time appointed for performance, repudiates it by deliberately declaring he will not perform, the other party may treat the contract as terminated and recover the damages sustained by the other's breach, unless it be a contract of which specific performance is desired and could properly be decreed.
2. In such case the effect of the termination is to stop the performance at the point then reached, subject to the payment of damages, but not to undo what has already been done thereunder.
3. Where earnest money was voluntarily paid at the inception of a land contract as part payment thereon and was rightfully in the

vendor's possession, and the vendee repudiated the contract while there was still ample time for the vendor to perform, the vendee does not thereby reinvest himself with the title to the earnest money.

4. Where a purchaser of land wrote frequent and emphatic letters to the vendor stating that he considered the contract rescinded or annulled, demanding return of the earnest money, and threatening immediate suit if it was not returned, such acts amount to clear, unequivocal, and absolute refusal to perform the contract on his part.

5. In such case, under the evidence, stated in the opinion, the vendor is *held* to have never treated the vendee's repudiation as a breach, but to have kept the contract alive, and he must therefore show ability to perform on his part in order to defeat the vendee's claim for recovery of the earnest money.

6. Where it appears from the evidence that the articles of a corporation were duly made and filed and actually recorded as required by law, but had not been indexed, the mere failure of the register of deeds to properly index the record does not invalidate the corporation or suspend its legal powers.

7. Action for specific performance of a land contract can be maintained notwithstanding the existence of liens presently payable, since the court can, by its decree, make provision for their payment and discharge out of the purchase money then due.

8. A lien on realty, which may be paid out of the purchase money simultaneously with the delivery of the deed, does not make an otherwise perfect title unmarketable.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

This is an action to recover earnest money paid by the plaintiff to the defendant upon an executory contract for the conveyance of land on the ground of failure of performance by the defendant. The defense was, in substance, that the plaintiff repudiated the contract before the expiration of the time within which it might be performed and thus forfeited any claim to the return of the earnest money. Trial by jury was waived and the case tried by the court. The evidence showed that on June 30, 1902, the plaintiff and defendant, a corporation, entered into a written contract called an earnest-money contract. This contract acknowledged receipt by the

defendant from the plaintiff of $1,000 as part payment for 9,000 acres of land at $3.50 per acre, then sold and agreed to be conveyed by the defendant to the plaintiff, in Oneida county, Wisconsin, on certain conditions, among which were that one third of the consideration in addition to said $1,000 was to be paid upon delivery of a properly executed contract for the conveyance of the lands according to a draft of such contract attached, and the balance of the consideration in five equal annual instalments; that within twenty days an abstract was to be furnished by the defendant; that the plaintiff was to have till August 30, 1902, to examine the title, and that, if defects should be found in the title rendering the same unmarketable, defendant should have a reasonable time after written notice thereof to cure such defects, but if the title to any portion of the land was not marketable, and could not be made so within the time limited, then such portion (not exceeding 500 acres) was to be excepted from the operation of the contract; and if the title to at least 8,500 acres was made marketable within the limit of time, and the plaintiff refused to accept the same or to perform his part of the contract, then the earnest money was to be forfeited to the defendant as liquidated damages. It further appears that after some delay (which delay was waived by the plaintiff) an abstract was furnished by the defendant to the plaintiff August 2, 1902; that on the 12th day of the same month the plaintiff sent a letter to the defendant, stating a number of defects in the title to various parcels of the land, including unpaid taxes, outstanding tax certificates, an uncanceled mortgage of $8,000 on a part of the land, and an alleged easement of flowage; that on August 23, 1902, the plaintiff sent a letter to defendant stating that the lands were incumbered and that the contract was thereby rescinded and that plaintiff would not carry it out, and demanding a return of the earnest money as well as the payment of $300 damages; that afterwards, on the same day, plaintiff and defendant, by a memo-

randum in writing upon said contract, agreed that the time should be extended to October 1, 1902; that on September 2, 1902, the plaintiff wrote a letter stating that he was informed that serious damage had been done to the land by forest fires, and that he considered the contract rescinded and demanded the return of the $1,000 earnest money; that on the 19th of the same month he wrote again, demanding the return of the earnest money and threatening suit in case it was not paid; that on the 22d of the same month he sent a formal notice to the defendant stating that by reason of the failure of title, and incumbrances upon the lands, and deficiencies therein occurring since June 30, 1902, he declared the agreement annulled and demanded the return of the $1,000 earnest money; that on the 20th of September the defendant wrote to the plaintiff stating that it expected to carry out the contract and would not return the earnest money, but would perform the contract on its part on or before October 1st; that on September 25th the defendant wrote again, stating that it intended to carry out the contract and refusing to return the earnest money; that on September 29th the plaintiff wrote to the defendant again, stating that the contract was rescinded and renewing his demand for the return of the earnest money; that on October 14th the defendant's attorney called on the plaintiff at his office in Minneapolis, having in his possession a satisfaction of the $8,000 mortgage above referred to and also a contract such as was contemplated by the earnest-money contract, and announced to the plaintiff that he had such instruments in his possession and asked plaintiff what he proposed to do about the contract, and plaintiff replied that he refused to carry it out; that after service of the written notice of defects in the title the defendant undertook to remove the objections to said title, and continued to make efforts to carry out the contract on its part up to the time when it received the notice from the plaintiff of Sep-

tember 2d, at which time it ceased its efforts, believing that the plaintiff would not perform the contract; that most of the defects claimed by the plaintiff in the title either did not exist or were in fact cured by the defendant after the notice of such defects was given, but that the $8,000 mortgage was undischarged, and that there were outstanding tax certificates on twenty-seven forties of the lands, issued upon the tax sale of 1896, the aggregate amount of such certificates not exceeding the sum of $200. Upon these facts the trial court concluded that plaintiff was not entitled to recover said earnest money, and judgment for the defendant was rendered, from which the plaintiff appeals.

For the appellant there was a brief by *John W. Bashford* and *R. M. Bashford,* attorneys, and *P. M. Woodman, pro se,* and *Francis B. Hart,* of counsel, and reply briefs signed by *Francis B. Hart* and *P. M. Woodman,* and oral argument by *Mr. Woodman.*

*Harold Harris* and *John Barnes,* for the respondent.

The following opinion was filed May 2, 1905:

WINSLOW, J. While there were a number of questions raised by the appellant in this case and ably argued by him in person both in his brief and upon his oral argument, it appears very conclusively to us that a single well-established legal principle adopted by this court establishes the correctness of the judgment. That principle is that, when one party to an executory contract, before the time appointed for performance, repudiates it by deliberately declaring that he will not perform, the other party may treat the contract as terminated and recover the damages sustained by the other's breach. *Merrick v. N. W. Nat. L. Ins. Co.* 124 Wis. 221, 102 N. W. 593. The injured party is not required to perform on his part, unless, indeed, it be a contract of which specific performance is desired and could properly be decreed; but he

may cease his own efforts to perform and demand damages for the other's breach. In this state and in many jurisdictions that action may be maintained at once, but in some jurisdictions it cannot be maintained until the day of performance has been passed. That question, however, is of no importance here. *Merrick v. N. W. Nat. L. Ins. Co., supra; Davis v. Bronson,* 2 N. Dak. 300, 50 N. W. 836; *Gibbons v. Bente,* 51 Minn. 499, 53 N. W. 756; *Shaw v. Republic L. Ins. Co.* 69 N. Y. 286; Leake, Contracts (4th ed.) 615–617; 9 Cyc. 637, 638, 698, 699. The principle is that, unless the contract be one of which a court of equity will decree specific performance, either party may terminate it pending its performance, subject only to the payment of the damages which the other party sustains thereby. The effect of such termination is to stop the performance at the point then reached, subject to the payment of damages, but not to undo what has already been done thereunder. In other words, the act of termination or repudiation stops the progress of events just where it finds them, but has no retroactive effect, and cannot, in reason, have any such effect. Applying that principle to the present case, it is very plain that the plaintiff cannot recover. The earnest money was voluntarily paid by the plaintiff at the inception of the contract as a part payment thereon and was rightfully in defendant's possession. The plaintiff repudiated the contract while there was still ample time for the defendant to perform. By that act he did not and could not affect the character of the acts which had already been performed in carrying out the contract, and manifestly could not reinvest himself with the title to the earnest money. This is so plain that further discussion is unnecessary.

*By the Court.*—Judgment affirmed.

The appellant moved for a rehearing.
*Francis B. Hart,* for the motion.
*Harold Harris* and *John Barnes, contra.*

· . The following opinion was filed October 3, 1905:

WINSLOW, J. A motion for rehearing has been made by the appellant in this case, and we have endeavored to give it that careful consideration which the importance of the principles involved and the ability of the argument made demand. No serious fault is found with the legal principle stated in the former opinion. It is admitted that the court correctly stated that "when one party to an executory contract, before the time for performance, repudiates it by deliberately declaring that he will not perform, the other party may treat the contract as terminated and recover the damages sustained by the other's breach." But it is argued that (1) there was no absolute and unequivocal repudiation in fact, and, (2) even if there was such a repudiation, still the defendant did not treat it as a breach, and hence cannot now take advantage of it, but must show full performance on its own part.

As to the first of these contentions we shall spend little time upon it. The frequent and emphatic written declarations of the plaintiff that he considered the contract rescinded or annulled, demanding return of the earnest money, and threatening immediate suit if it was not returned, seem to us as amounting to very clear, unequivocal, and absolute refusals to perform.

The second contention, however, is far more serious. The law with regard to an anticipatory breach of an executory contract doubtless is that the other party must treat it as a breach, and·that if he do not do so, but continue to demand performance, he will be held to have kept the contract alive for the benefit of both parties. In other words, he cannot treat the repudiation both as a breach and as no breach at the same time. Benjamin, Sales (7th Am. ed.) § 568; Anson, Contracts (2d Am. ed.) 371; 9 Cyc. 698, 699; *Dingley v. Oler,* 117 U. S. 490, 6 Sup. Ct. 850. The court found in the present case that the defendant ceased its efforts to remove the ob-

jections to the title after receipt of the plaintiff's letter of September 2d. Had this been the only fact in evidence throwing light on the conduct of the defendant, it might perhaps be said that it did in fact treat the plaintiff's repudiation as a breach; but it appears without dispute that the defendant notified the plaintiff by letter dated September 20, 1902, that it should carry out the contract on its part, and should expect the plaintiff to do the same, and again on September 25th sent a letter of like purport. The defendant also alleges in its answer that it was at all times ready, able, and willing to carry out the provisions of its said contract, and that on October 1, 1902, it tendered to the plaintiff a satisfaction of the $8,000 mortgage and a duly executed contract of sale, as required by the option contract, and has ever since a date prior to said October 1st been ready, willing, and able to perform its part of the contract. On mature reflection we are of opinion that it very clearly appears by these facts and admissions that the defendant never treated the plaintiff's repudiation as a breach, but has continued to demand performance, and has thus kept the contract alive, and must now show ability to perform on its own part in order to defeat plaintiff's claim for recovery of his earnest money.

This brings us to the second branch of the case, namely, the question whether the defendant had marketable title to at least 8,500 acres on October 1, 1902. It will be noticed that the contract does not require the defendant to exhibit a marketable title. A number of defects in the title were claimed upon the trial, but only two deserve serious attention, and these two will be briefly considered.

(1) The defendant's title came through the Brown-Robbins Lumber Company, a corporation, and the abstract of title failed to show that the articles of incorporation had ever been recorded in the office of the register of deeds of Oneida county, as required by subd. 7, sec. 1772, Stats. 1898. It was shown by the evidence that the articles were duly made

and filed and actually recorded as required by law, but had
not been indexed. The mere failure of the register of deeds
to properly index the record cannot be regarded as invalidat-
ing the corporation or suspending its legal powers.    This
seems too clear to require argument.

(2) The lands were incumbered by a mortgage for
$8,871.85 to one Bishop, executed March 3, 1902, being the
mortgage referred to as the $8,000 mortgage in the statement
of facts herein. This mortgage contained a provision to the
effect that the mortgagee, upon request, would release any
portion of the lands at any time upon payment of $2.50 per
acre. A release of the mortgage in full was signed by Bishop
on October 1, 1902, and acknowledged on the following day,
and was in possession of the defendant's attorney when he
called on the plaintiff October 14, 1902. It also appeared
that twenty-seven forty-acre parcels of the land were sold for
taxes in May, 1896, but that no tax deeds had been issued
upon the certificates, and that the aggregate amount of the
tax certificates and interest did not exceed $200. These in-
cumbrances may be treated together. They were all presently
payable and aggregated a little more than $9,000.    There
were 8,760 acres of land, the title to which was certainly
marketable, subject to these last-named liens. The purchase
price was $3.50 per acre, or $30,660 in the aggregate.  One
third of this sum, or $10,220, was payable on delivery of the
land contract October 1st. The defendant on that day could
have brought and maintained his action for specific perform-
ance of the contract, notwithstanding the existence of these
liens, because they were presently payable, and the court could
by the decree make provision for their payment and dis-
charge out of the purchase money then due. 26 Am. & Eng.
Ency. of Law (2d ed.) 109; *Guild v. Atchison, T. & S. F.
R. Co.* 57 Kan. 70, 45 Pac. 82; *Frain v. Klein,* 18 App. Div.
64, 45 N. Y. Supp. 394; *Edmison v. Zborowski,* 9 S. Dak.
40, 68 N. W. 288. The idea is that a lien which may be paid

out of the purchase money simultaneously with the delivery of the deed does not make an otherwise perfect title unmarketable.

*By the Court.*—Rehearing denied, without costs.