BADGER STATE LUMBER COMPANY, Respondent, vs. G. W. JONES LUMBER COMPANY, Appellant.

*May 14—June 3, 1909.*

*Executory contracts: Stopping performance: Remedies: Damages for breach: Rights of parties, when determined: Entire contracts: Grounds of rescission: Pleading: Waiver: Delivery f. o. b. cars: When title passes.*

1. Where specific performance of an executory contract cannot be enforced, either party may by explicit order stop performance by the other, subjecting himself thereby only to a liability to the other party for compensatory damages for such breach.
2. A contract for the sale of lumber to be manufactured, graded, tallied, hauled, and delivered on board cars at such times as cars are furnished by the purchaser, title to remain in the seller until the lumber is shipped and paid for, is executory so far as it relates to lumber not delivered at the time of a renunciation of the contract by the purchaser.
3. The rights of the parties under such a contract must be determined as of the date the purchaser renounces his contract and refuses to carry it out.
4. A contract requiring a commodity to be shipped in carload lots as cars are furnished by the purchaser, each car shipped before a designated date to be paid for in cash fifteen days from date of shipment, is apportionable and not entire.
5. Under such a contract the purchaser may receive part of the commodity and may breach the contract as to the portion not delivered without subjecting himself to liability for the purchase price thereof, provided the contract has not been performed by the seller as to the undelivered portion.

6. Ordinarily, facts which will warrant a rescission must have existed at the time the contract was made.

7. In an action to recover the contract price of lumber the defendant, having by answer denied plaintiff's right to recover on such cause of action, may, by counterclaim, plead that if it should be held liable to take and pay for any portion of the lumber it should be allowed damages by way of recoupment and setoff because of poor manufacture, without thereby waiving any rights it might have under an attempted rescission.

8. A contract obligating the seller to deliver a commodity f. o. b. cars is not a sale *in præsenti*, either when made or when the commodity is manufactured, since the title does not pass to the purchaser until the commodity is delivered by loading it on the cars.

APPEAL from a judgment of the circuit court for Pepin county: E. W. HELMS, Circuit Judge. *Reversed.*

On April 10, 1907, the plaintiff and defendant entered into a contract by the terms of which the plaintiff agreed to sell and the defendant agreed to buy all of plaintiff's stock of soft elm lumber. The contract recited that a considerable portion of the lumber was then sawed and in pile in the city of Durand, and that the remainder of the stock was to be sawed from logs at the Plummer mill in Durand, and at John Moy's mill in the town of Canton, Buffalo county, Wisconsin, and at Julliot's mill in the town of Waterville, Pepin county, Wisconsin, and at Gates's mill in the town of Frankfort, Pepin county, Wisconsin, and that so much of the logs as were unsawed were to be sawed as soon as possible under the supervision of the plaintiff. The plaintiff agreed to manufacture the portion of the logs not yet sawed into such thicknesses as the defendant might direct, and to cause the sawing to be done in a good and workmanlike manner; also to load the lumber sold (estimated at 550,000 feet more or less) into cars at Durand, Wisconsin, at such time as cars were provided by the defendant, but at the expense of the plaintiff. The plaintiff agreed to ship the lumber as soon as same was in shipping condition. The National Hardwood Lumber Association rules were to govern the inspection and scale, and

the inspection and scale were required to be made at the mill and were to be final. It was further provided that both of the parties should have their inspectors present when the lumber was being loaded, if they so elected, but, in the event of the failure of the defendant to furnish an inspector, the inspection made by the plaintiff should be final. In case any dispute as to scale or grade arose between the inspectors for the parties to the contract, which could not be settled by them, it was agreed that such dispute should be adjusted by an inspector of the National Hardwood Lumber Association. It was further agreed that the lumber should be well sawed, of proper thickness, edged and trimmed, and the logs so sawed as to produce as much of the upper grades of lumber as possible. The defendant agreed to ship all of said lumber on or before January 1, 1908. If any stock remained in the yard. after that time, it was agreed that it should be jointly estimated by the representatives of the parties and be paid for according to such estimate. For all water elm, red elm, and gray elm the defendant agreed to pay the plaintiff, f. o. b. Durand, for No. 3 common and better, $20 per thousand feet, upon the following terms of payment: "Cash fifteen days. from date of shipment, less two per cent. Sixty days from date of shipment, net." It was further agreed between the parties that title to the lumber should remain in the plaintiff until same was shipped out or paid for according to the estimate of January 1, 1908.

On November 27, 1907, plaintiff shipped to defendant, at its request, one carload of lumber. This car was invoiced at the contract price, and contained upper grades of lumber, and was paid for at the contract price. On November 29, 1907, the defendant wrote plaintiff as follows:

"It will be impossible for us to take the soft elm we bargained with you for, as the stock has not been sawed at all in accordance with our instructions. Our Mr. B. G. Harper, whom we sent there to take up a trial car of the stock, ex-

·plained the matter fully to your Mr. Pierce, so you know what our grounds for complaint are against the lumber. We regret to advise you of this, but if you will look up the correspondence we have had with you in reference to sawing this stock, you will find that we gave you explicit and positive instructions regarding it, and these instructions have not been observed. Under these circumstances we feel justified in turning the stock down."

On the day following the plaintiff acknowledged receipt of this letter, in which it denied that the lumber was not properly manufactured, and stated that if the lumber was not shipped out by the defendant in accordance with the terms of the contract it would cause the lumber to be estimated, and commence action to recover the contract price of the same. On January 14, 1908, the plaintiff again wrote the defendant, calling its attention to the provision in the contract providing for an estimate of the lumber by joint representatives of the parties, and notifying the defendant that it was ready to proceed with such estimate, and further stating that if the defendant did not appear on or before January 28, 1908, it would on that date proceed to take the estimate without the co-operation of the defendant, and bring suit to recover the contract price. The defendant did not elect to take any part in making the estimate, and the plaintiff caused an estimate to be made in accordance with the statement contained in its letter of January 14th. On February 29, 1908, the plaintiff forwarded to the defendant a bill for the contract price of the lumber in accordance with the estimate made by it. The amount of such bill was $11,078.16. The defendant refused to pay, and this action was brought to recover the contract price of the lumber and resulted in a verdict and judgment in favor of the plaintiff for such contract price, from which judgment this appeal is taken.

For the appellant there was a brief by *Nash & Nash,* attorneys, and *C. A. Ingram,* of counsel, and oral argument by *L. J. Nash.* They contended, *inter alia,* that contracts like

the one in suit providing for the sale and delivery of a large
quantity of lumber or other commodities in carload lots, with
separate payments for the separate shipments, are manifestly
severable; each delivery separates and executes the contract
*pro tanto,* leaving what is still undelivered subject to any
lawful objections, even though the lots already delivered and
received were subject to the same objections.   Such a par-
tial delivery is not an acceptance of any part of the whole
quantity not yet delivered.   *Ketchum v. Wells,* 19 Wis. 25;
*McDonald v. Gardner,* 56 Wis. 35; *Hoffman v. King,* 58 Wis.
314; *S. C.* 70 Wis. 372; *Gill v. Benjamin,* 64 Wis. 362; *Mc-
Millan v. Fox,* 90 Wis. 173; *Murphy v. Sagola L. Co.* 125
Wis. 363; *In re Kelly,* 51 Fed. 194; *Hubbard v. George,* 49
Ill. 275; *Cook v. Brandeis,* 3 Metc. (60 Ky.) 555; *Hollfield
v. Black,* 20 Mo. App. 328; *American P. P. & B. Co. v.
Oakes,* 64 Mo. App. 235; *Farmer v. Gray,* 16 Neb. 401, 20
N. W. 276; *Visscher v. Greenbank A. Co.* 11 Hun, 159;
*Pacific Coast E. Co. v. Bravinder,* 14 Wash. 315, 44 Pac.
544; *Conway v. Fitzgerald,* 70 Vt. 103, 106, 39 Atl. 635;
*Clark v. Wheeling S. Works,* 53 Fed. 494; *Creswell R. & C.
Co. v. Martindale,* 63 Fed. 84, 86; *Bennett v. Shaughnessy,* 6
Utah, 273, 277, 22 Pac. 158; *Eastern F. Co. v. Corbin,* 182
Mass. 590.   The defendant had the legal right to renounce
and repudiate the contract, so long as it remained executory;
absolutely and without recourse if for good cause, but just as
absolutely without any cause; in the latter case, however, sub-
ject to defendant's liability to compensate the plaintiff for all
resulting damages.   *Ward v. American H. F. Co.* 119 Wis.
12, 25; *Fountain City D. Co. v. Peterson,* 126 Wis. 512;
*Engeldinger v. Stevens,* 132 Wis. 423; *Collins v. Delaporte,*
115 Mass. 159, 162; *Oklahoma V. Co. v. Carter,* 116 Ga.
140, 94 Am. St. Rep. 112; *Gibbons v. Beate,* 51 Minn. 499,
22 L. R. A. 80.   The measure of damages resulting from a
wrongful renunciation of a contract of sale is never the con-
tract price, but the difference between such contract price

and the market value of the chattels. The title to the lumber never passed to the defendant. The plaintiff still owns it. The contract provided that the title should not pass until the lumber was "shipped out or paid for according to the estimate of January 1, 1908." Eliminating the element of a wrongful renunciation or repudiation of an executory contract of sale, it is still the law that the seller cannot recover the purchase price until after the title has passed." Benj. Sales, sec. 311; 24 Am. & Eng. Ency. of Law (2d ed.) 1118–1120; *Smith v. Barron Co.* 44 Wis. 686; *Ganson v. Madigan,* 9 Wis. 146; *S. C.* 13 Wis. 67; *S. C.* 15 Wis. 144; *Pike v. Vaughn,* 39 Wis. 499; *Hoffman v. King,* 58 Wis. 314; *S. C.* 70 Wis. 372; *Ketchum v. Wells,* 19 Wis. 25; *Hill v. Chipman,* 59 Wis. 211; *Manufacturers' Bank v. Rugee,* 59 Wis. 221; *State ex rel. Vilas v. Wharton,* 117 Wis. 558; *Mason v. Decker,* 72 N. Y. 595; *Mitchell v. Le Clair,* 165 Mass. 308; *Brocklen v. Smeallie,* 140 N. Y. 70; *Jenkinson v. Monroe Bros. & Co.* 61 Mich. 454, 28 N. W. 663.

For the respondent there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.* They contended, *inter alia,* that the authorities in this state and elsewhere sustain the proposition that the vendor in an executory contract of sale of personal property, on refusal of the vendee to accept the goods, may store the goods and recover the contract price. *Nisbet v. Gill,* 38 Wis. 657; *Boyington v. Sweeney,* 77 Wis. 55, 68; *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648; *Hartman F. & C. Co. v. Krieger,* 137 Wis. 650, 119 N. W. 347; *Dustan v. McAndrew,* 44 N. Y. 72; *Hayden v. Demets,* 53 N. Y. 426; *Mason v. Decker,* 72 N. Y. 595, 28 Am. Rep. 190; *Bagley v. Findlay,* 82 Ill. 524; *McCormick H. M. Co. v. Markert,* 107 Iowa, 340, 78 N. W. 33; *Mitchell v. Le Clair,* 165 Mass. 308; *Van Brocklen v. Smeallie,* 140 N. Y. 70, 35 N. E. 415, 416; *Ganson v. Madigan,* 15 Wis. 144. The rescission, if at all, must be total. Any act by the purchaser in recognition of the contract precludes his right to rescind. *Churchill v. Price,* 44

Wis. 540; *Cream City G. Co. v. Friedlander,* 84 Wis. 53, 58, 59; *Kingman & Co. v. Watson,* 97 Wis. 596, 612; *Zipp Mfg. Co. v. Pastorino,* 120 Wis. 176; *James Music Co. v. Bridge,* 134 Wis. 510. A complaint or counterclaim for damages for breach of a contract is an affirmance of the contract, inconsistent with a claim that the contract has been rescinded, and is a waiver of any right to a rescission. *Main v. Procknow,* 131 Wis. 279; *Pfeiffer v. Marshall,* 136 Wis. 51, 116 N. W. 871; *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758. Where the buyer accepts property and fails to object in a reasonable time that it does not comply with the contract, he waives his right to afterwards object that the property does not comply with the terms of the contract, and waives his right to recover damages on account of any alleged defects. *Northern S. Co. v. Wangard,* 117 Wis. 624, 629; *H. McCormick L. Co. v. Winans,* 126 Wis. 649, 654; *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 128; *Forster, Waterbury Co. v. F. MacKinnon Mfg. Co.* 130 Wis. 281.

BARNES, J. The rule is well settled that in executory contracts, where specific performance cannot be enforced, either party has the power to stop the performance on the other side by an explicit order to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that point or stage in the execution of the contract. In such cases it is held that an action cannot be maintained to recover the contract price, but may be maintained to recover damages for the breach of the contract. *Ward v. Am. H. F. Co.* 119 Wis. 12, 25, 96 N. W. 388; *Fountain City D. Co. v. Peterson,* 126 Wis. 512, 106 N. W. 17; *Merrick v. N. W. Nat. L. Ins. Co.* 124 Wis. 221, 226, 102 N. W. 593; *Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992; *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 494, 103 N. W. 236, 104 N. W. 920; *Engeldinger v. Stevens,* 132 Wis. 423, 424, 112 N. W. 507.

The decisions of this court upon the question under discus-

sion are in harmony with the great weight of authority else-
where. Mr. Page states the rule applicable where one party
to a contract, who is not himself in default, has covenants still
to be performed when the breach is committed by the other
party, as follows:

"The adversary party cannot ignore the breach, perform
the covenants of the contract on his part to be performed, and
recover the entire contract price as if no breach had occurred.
This state of facts often exists in breach by renunciation."
3 Page, Contracts, § 1435. See cases cited in notes 2 and 3,
p. 2219.

If the contract was still executory the defendant might
breach it, and would thereby subject itself to the payment of
such damages as would fairly compensate the plaintiff for the
breach, and ordinarily such damages would be the difference
between the contract price of the lumber and its value at the
time of the breach. *Ganson v. Madigan,* 13 Wis. 67, 72;
*S. C.* 15 Wis. 144, 150; *Chapman v. Ingram,* 30 Wis. 290.

The general rule that a breach of an executory contract
gives a right of action for damages for the breach and not
for recovery of the purchase price is not modified by the case
of *Boyington v. Sweeney,* 77 Wis. 55, 45 N. W. 938. It is
there held that where the vendor tenders a delivery in ac-
cordance with the terms of the contract, and an actual deliv-
ery is prevented by the refusal of the vendee to accept and
receive the article at the time and place agreed upon, the
vendor may sue for and recover the purchase price. In this
case the plaintiff failed to furnish cars within a reasonable
time, and before they were furnished a portion of the logs sold
were burned, and it was held that the offer to deliver was
tantamount to an actual delivery, and that the vendor had in
fact performed his part of the contract. The case of *Pratt
v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368,
holds that where a vendor, in an executory contract for the
sale of goods to be paid for on delivery, discovers that the

vendee has become insolvent, he may store the property for the buyer and sue for and recover the purchase price. No other case in this court is called to our attention that has any tendency to mitigate the rigor with which the general rule referred to has been enforced.

It is a conceded fact in the case that the defendant wrote plaintiff on November 29, 1907, stating explicitly that it would be impossible for it to take the stock bargained for. Certain reasons were stated in the letter for the decision arrived at, which were found by the jury to be groundless. The letter was received in due course of mail and was replied to by the plaintiff upon the day following its date. The important questions in the case therefore are: (1) Was the contract executory when defendant's letter was received? (2) If it was, did the defendant by its subsequent conduct waive the renunciation of the contract contained in its letter? Whatever difficulties the case may present do not arise out of any uncertainty as to what the law is on the points involved. A correct application of the facts to the established rules of law is all that is necessary in order to determine the rights of the parties.

When does a contract, executory when made, become executed so that the vendor may sue and recover the purchase price of the article contracted for? In the early case of *Ganson v. Madigan,* 13 Wis. 67, 72, the court held:

"Where the vendor has actually taken all the steps necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and the rule of damages would be the contract price; but where he is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages; but the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property at the time of the refusal and the price agreed on."

The contract in this case was for the sale of a reaper, and
the vendee was informed that he could have his pick of a
large number of reapers shipped to the agent of the vendor
in knocked-down form. The vendee refused to make any se-
lection, and the court held that because of the failure of the
vendor to set up the reaper and make an offer or tender of
it as an entirety he could not recover the purchase price, but
only damages for the breach of the contract. The decision
was re-examined at some length and re-affirmed on a second
appeal. 15 Wis. 144, 150. The rule adopted in this case has
not been departed from in any substantial particular, and it
has in effect been followed in a number of cases since decided.
*Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992; *Hoffman v.
King,* 58 Wis. 314, 317, 17 N. W. 136; *Ward v. Am. H. F.
Co.* 119 Wis. 12, 25, 96 N. W. 388; *McMillan v. Fox,* 90
Wis. 173, 62 N. W. 1052.

Under the authorities cited, and assuming that the title to
the lumber contracted for did not pass to the vendee in the
contract, we fail to see any logical ground for saying that such
contract was not an executory one in so far as it related to
lumber not delivered when the letter of renunciation was writ-
ten. A portion of the lumber was sawed and in pile at Du-
rand, Wisconsin. As to such lumber it was necessary to sep-
arate the No. 3 and better lumber from that below the grade
of No. 3 and to ascertain the quantity of the same. Each
party might furnish an inspector, and in case of disagreement
it was provided that an inspector of the National Hardwood
Lumber Association should act as umpire to settle the dispute.
If the vendee failed to select an inspector, then the vendor
might inspect, and such inspection should be final. The
vendor was required to haul the lumber from the pile and de-
liver it on board cars at Durand. A portion of the lumber
was at two or three different country mills several miles dis-
tant from Durand. The contract required such lumber to be
inspected and tallied in the same manner as that located at

Durand, and also required the vendor to haul the same to Durand and deliver it on board cars. There was also a small quantity of lumber not sold under the contract mixed with that which was, and it necessarily would have to be separated before the contract was completed by the vendor. The evidence failed to show the expense which the plaintiff would necessarily incur in completing the contract, but it is apparent that it would be a very material item, and that the contract was not substantially performed by the vendor on November 29th. That it was ready, able, and willing to perform is not the equivalent of performance for the purposes of this case. *Ganson v. Madigan, supra.* The defendant might have ordered all of the lumber during the month of December, and the plaintiff would have been obliged to grade, tally, haul, and deliver the lumber on board cars. Prior to November 29th the defendant was not in default to the extent that it was not entitled to have the lumber delivered f. o. b. cars, and upon that date it renounced its contract and refused to carry it out. The rights of the parties must be determined as of that date, and we fail to see how we could logically hold that at that time the contract was even substantially performed by the plaintiff.

The contention that the contract was entire, and that the acceptance of and payment for one carload of the lumber was an acceptance of the entire stock and a waiver of any right to resist payment of the purchase price thereof, is not tenable. The contract required the lumber to be shipped in carload lots, and provided that each car shipped before January 1st should be paid for in "cash fifteen days from date of shipment, less two per cent. Sixty days from date of shipment, net." The contract was an apportionable one, and the defendant might receive part of the lumber thereunder and breach the contract as to the portion which was not delivered without subjecting itself to liability for the purchase price thereof, provided the contract had not been performed by the plaintiff as to the un-

delivered portion of the stock. *Ketchum v. Wells,* 19 Wis. 25, 33; *McDonald v. Gardner,* 56 Wis. 35, 41, 13 N. W. 689; *Clark v. Clifford,* 25 Wis. 597; *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513; *McMillan v. Fox,* 90 Wis. 173, 176, 62 N. W. 1052; *La Coursier v. Russell,* 82 Wis. 265, 52 N. W. 176; *Hildebrand v. Am. F. A. Co.* 109 Wis. 171, 85 N. W. 268; *Tillon v. J. L. Gates L. Co. post,* p. 197, 121 N. W. 331.

It is argued that the defendant waived any rights it might have under its attempted rescission of November 29th by counterclaiming in its answer for damages for alleged breaches of the contract on plaintiff's part. The cases of *Main v. Procknow,* 131 Wis. 279, 111 N. W. 508, and *Pfeiffer v. Marshall,* 136 Wis. 51, 116 N. W. 871, are cited to the point that a counterclaim for damages for breach of a contract is an affirmance of the contract and is inconsistent with and is a waiver of a plea of rescission. We do not understand that the defendant has ever asked that the contract be rescinded, or even claimed that any facts existed which would warrant a rescission. Contracts are usually rescinded because a party has been fraudulently induced to enter into the contract obligation. The facts that will ordinarily warrant a rescission must have existed at the time the contract was made. The position of the defendant here was that the plaintiff had breached its contract in material particulars and that for such reason defendant would not perform. The defendant by its pleading denied the right of the plaintiff to recover the contract price of the lumber. It then stated that, if it should be held liable to take and pay for any portion thereof, it should be allowed $5 per thousand damages by way of recoupment and setoff because of poor manufacture. We do not think this answer comes within the principle of the cases cited, or that there was any waiver on defendant's part of its right to insist that the only recovery that could be had against it was the amount of damages occasioned by the breach of its contract.

It is urged that the contract constituted a sale of the lumber *in præsenti*, either when made or when the lumber was manufactured, notwithstanding the reservation of title made by the vendor, until the lumber was paid for. The contract obligated the vendor to deliver the lumber f. o. b. cars. A number of such contracts have been before this court, and it has been held that the title under such a contract does not pass to the vendee until the article sold is delivered by loading it on cars. *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820; *Fromme v. O'Donnell,* 124 Wis. 529, 103 N. W. 3; *Murphy v. Sagola L. Co.* 125 Wis. 363, 103 N. W. 1113; *Engeldinger v. Stevens,* 132 Wis. 423, 112 N. W. 507; *John O'Brien L. Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *State ex rel. Pittsburgh C. Co. v. Patterson,* 138 Wis. 475, 120 N. W. 227. The contrary rule adopted in *Boyington v. Sweeney,* 77 Wis. 55, 45 N. W. 38, has been overruled. *Vogt v. Schienebeck, supra.*

The conclusions reached render it unnecessary to consider various other matters discussed in the briefs and in the oral argument.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.