GLIDDEN STATE BANK, Appellant, vs. SCHOOL DISTRICT No. 2 OF THE TOWN OF JACOBS, Respondent.

*October 27—November 15, 1910.*

*Schools and school districts: Powers of board: Purchase of safe: Ratification: School orders: Stopping payment: Action.*

1. Neither sec. 435, Stats. (1898), providing that the school board shall have the care and keeping of the property of the school district, nor sec. 436, authorizing such board to purchase necessary books, blanks, and stationery, gives the board authority to purchase a safe.
2. Having no authority to purchase a safe, a school board cannot by ratification validate a void purchase thereof by individual members of the board.
3. Where payment of a school order has been stopped by the board before action brought thereon, no action can afterwards be maintained on the order, the only remedy being for breach of the contract.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action on a school order dated December 12, 1907, now owned by plaintiff, but originally issued to one W. Stanley Smith for the purchase price of a safe which the latter claimed to have sold to the school district pursuant to a resolution adopted July 1, 1907. On that date, at a meeting of the school district, a motion was carried to raise $50 for a safe for the district. On July 6, 1907, at a meeting of the school board, there was a "motion made by Alex Morris for Mike Schwilke to buy a safe for the district," which was carried. On August 17, 1907, at a meeting of the school board called to order by the clerk and attended by all the members, "the claim of Mike Schwilke for $22.87 was allowed for safe . . . and an order issued to him," which was paid. On October 22, 1907, the balance of $27.17 in the safe fund was duly transferred by the board to the general fund.

It appeared that about August 1, 1907, W. Stanley Smith

had some negotiations with two of the officers of the school board for the sale of the former's safe to the district for $35, and on or about August 1, 1907, such officers loaded the safe on a wagon and took it to the residence of Mr. Prosser, the then clerk. Thereafter, November 23, 1907, there was a "meeting called to order by Alex Morris at 8 o'clock p. m. according to notice for the purpose of allowing certain bills and settle the question of the safe which J. A. Prosser has taken from W. Stanley Smith." At this meeting, at which only two members were present, a motion was made, seconded, and carried, to disallow the bill of Smith. On December 12, 1907, at a meeting duly called, there was a motion made and seconded to allow the bill of Smith for $35 for safe, and the order in suit was made and delivered to him therefor. On January 6, 1908, at a meeting attended by all the members, a motion was made, seconded, and carried, "to instruct treasurer to stop payment of the school order No. 32 for $35, dated Dec. 12, 1907, payable to W. Stanley Smith for safe," and a motion was made and carried that notice to that effect be printed in the Glidden Enterprise and mailed to Smith.

Upon motion of both parties for direction of verdict, the court directed the jury to return a verdict in favor of defendant, and from judgment entered thereon the plaintiff appealed.

*W. Stanley Smith*, for the appellant.

For the respondent there was a brief by *Sanborn, Lamoreux & Pray*, attorneys, and *Horace B. Walmsley*, of counsel, and oral argument by *Mr. Walmsley*.

VINJE, J. 1. It is not claimed by the plaintiff that the two members of the school board who negotiated the purchase of the safe from Smith about the 1st of August had any authority to do so, or that their action in any way bound the defendant. But it is claimed that the school board on December 12th, when it allowed Smith's bill, ratified the previous

purchase and that it had the power so to do, and therefore the order issued in payment of such bill was a valid order. It will be seen from the statement of facts that previous to December 12th the board had acted under, and exhausted, the authority given it by the district meeting to purchase a safe. It had bought one, paid for it, and transferred the balance of the safe fund back to the general fund. Hence, if the school board then had any authority to buy a safe it must have been because such authority was vested in it by statute. It is claimed that sec. 435, Stats. (1898), confers such authority. The portion of the section from which the authority is sought to be derived reads: "The board shall have the care and keeping of the schoolhouse, books, apparatus and other property of the district." This simply provides who shall have the custody of property already owned by the district. It in no wise confers any authority upon the board to purchase new property.

Sec. 436, Stats. (1898), provides:

"The board may purchase such books, blanks and stationery as are necessary for keeping a record of the proceedings of meetings and the account of the treasurer, and for doing the business of the district in an orderly manner."

It would be more reasonable to claim the authority under this section, though we are of the opinion that its language cannot be given an interpretation broad enough to confer it; certainly not broad enough to authorize the board to purchase a second safe after one had already been bought under authority given by the district meeting.

The records to be kept by the board are quite simple and not voluminous. They occupy but a small space, and are not of such great value that an irreparable loss would result to the district should they be destroyed or stolen. In view of these facts it cannot be held that the legislature, by the language quoted in the above sections, intended to confer authority upon the board to purchase a safe, and we can find no

·other statutory authority for it.   If the board had no au-
thority to purchase the safe in the first instance, it could not
validate the void purchase by ratification, for that would be
doing indirectly what it had no power to do directly.   Rati-
fication presupposes authority to do the act that is ratified.
*Balch v. Beach,* 119 Wis. 77, 95 N. W. 132.

It appears further that the board stopped payment of the
order sued upon before the action was brought.   This
amounted to a rescission of the contract by the defendant,
had one been made, and in such case the only remedy left
would be an action for damages for breach of the contract.
No action could be maintained upon the order.   *Badger
State L. Co. v. G. W. Jones L. Co.* 140 Wis. 73, 121 N. W.
933.

*By the Court.*—Judgment affirm